**NIXON CONSTRUCTION CO. et al.,**
Appellants,

v.

**E. J. DOWNS, Appellee.**

No. 15470.

Court of Civil Appeals of Texas.

Houston (1st Dist.).

May 8, 1969.

On Remittitur May 15, 1969.

Andrews, Kurth, Campbell & Jones, Frank B. Davis, Hugh M. Ray, Houston, for appellants.

Milton Schwartz, Houston, for appellee.

PEDEN, Justice.

Suit by subcontractor E. J. Downs for losses occasioned by cancellation of two contracts to pave parking areas. Nixon Construction Co. as general contractor and D. H. Overmyer Warehouse Co. as owner of the premises were Defendants, and they have perfected this appeal from an adverse judgment based on a jury verdict.

E. J. Downs, the appellee, entered into two contracts on March 15, 1966 with Nixon, each contract requiring him to provide a ten-inch base and asphalt topping on certain parking areas adjoining a warehouse being built for Overmyer, who approved the contracts. The first contract covered job number 426.08 and the second covered job number 426.09. The contracts contained identical provisions, one of which was: "11. The General Contractor shall give the Subcontractor reasonable time to settle any labor disputes, but if the Subcontractor has a work stoppage for a period of over 3 days, for any reason, the General Contractor shall have the right to have said work performed by others at the expense of the Subcontractor."

Work under job 426.08 was completed and Downs received payment for all of the amount for which he billed Nixon under the contract except $1,605.81 retained by Nixon and Overmyer in accordance with the contract's provisions. After several delays, which Downs testified were caused by heavy rains, work on job 426.09 was terminated on May 27, 1966 when Downs received a telegram signed by Nixon's regional manager; the parties have also stipulated that it was sent by "Nixon Construction Co. and/or Overmyer Warehouse Co." It stated: "Dear sir, due to soil conditions and weather it has been determined that concrete paving in lieu of asphalt is necessary to support anticipated loads contemplated for warehouse operations. Therefore this will serve as notice to cease all future paving operations."

In response to special issues, the jury found 1) that Downs was at all times ready, willing and able to perform in ac-

cordance with the terms and conditions of the contracts, 2) that Nixon and Overmyer by their conduct waived the three-day work stoppage provisions of the contracts, 3) that the work performed by Downs and his employees stopped for over three days during the period after he began work under one of the contracts in question and prior to May 27, 1966; the jury did not find 4) that Downs failed to have men and equipment on the job performing the work on job 426.09 in a workmanlike manner according to standard procedures so as to complete the job by the time as directed by a representative of Nixon. The jury did find 5) that $1,605.81 was still due and owing to Downs by Nixon and Overmyer under the contracts before those defendants terminated them, and 6) that Downs would have derived $17,225.00 in profits from his performance of the contracts had they not been terminated by Nixon and Overmyer.

Appellants' first three points of error are "no evidence", "insufficient evidence" and "against the great weight of the evidence" assignments with respect to the jury's answer to Special Issue Number 2. Appellants make the same assignments of error as to the jury's answers to Special Issues 1, 5 and 6.

 Appellants' first three points, which concern the jury's finding that they waived the three-day work stoppage provision of the contract, are overruled. We hold that the provision, which we have noticed as item 11 of the contract, was not available to Nixon and Overmyer as a defense under the facts of this case. Item 11 permitted Nixon to have "said work" performed by others at the expense of the subcontractor, but it did not authorize Nixon and Overmyer to cancel Downs' contract and go to a different type of construction (as they did) without compensating Downs for his loss of anticipated profits. If Nixon had invoked item 11 and required Downs to pay for having another subcontractor complete the asphalt paving, the substitute subcontractor's price for the job might have been so low as to increase Downs' profit.

Even if Special Issue Number 2 were an ultimate issue in this case, however, we would hold that the evidence supports the jury's answer to it. Downs testified that after the last work stoppage (which he said was caused by rain), Nixon's superintendent directed Downs' men and equipment in work on job 426.09 for at least three full days before May 27, the day the telegram which halted paving operations was sent and received.

"A waiver takes place where one dispenses with the performance of something which he has a right to exact, and occurs where one in possession of any right, whether conferred by law or by contract, with full knowledge of the material facts, does or forbears to do something, the doing of which or the failure or forbearance to do which is inconsistent with the right or his intention to rely upon it. 92 C.J.S. p. 1061. Waiver, of course, is a matter or question of intention." Ford v. Culbertson, 158 Tex. 124, 308 S.W.2d 855, at 865 (1958).

"A waiver, involving as it does the idea of intention, may be express or implied. Waiver may be shown by such conduct as will warrant the inference of the relinquishment of a known right. But waiver by implication will be applied only to prevent fraud or inequitable consequences. To establish an implied waiver of a legal right, there must be a clear, unequivocal, and decisive act of the party showing such a purpose or acts amounting to an estoppel on his part. In the absence of an express renunciation a waiver will not be presumed or implied contrary to the intention of the party whose rights would be injuriously affected thereby, unless by his conduct the opposite party has been misled to his prejudice into the honest belief that such waiver was intended or consented to." 60 Tex.Jur.2d 191–192, Waiver, § 9.

It is also noted that the telegram made no reference to the three-day work stoppage provision of the contracts, but stated that the reason for ceasing paving operations was that soil and weather conditions had caused defendants (appellants) to decide to pave with concrete instead of asphalt.

Mr. Nixon, who had been connected with Nixon Construction Co. when this controversy arose, testified that the telegram was sent to terminate the contract because Downs had not been on the job on the days specified in the contract. We conclude that Nixon's testimony was not of such force that the jury's answer to the second special issue was against the great weight and preponderance of the evidence even if it be considered an ultimate issue.

Appellants' points relative to the first special issue are also overruled. Appellants assert in support of these points that the parties mutually rescinded the contract, but we find no evidence of rescission on the part of Downs. Also, he testified that when he received the telegram of May 27 he was ready, willing and able to perform under the terms of the contract.

We hold that the evidence supports the jury's finding in response to the fifth special issue, that Nixon and Overmyer owed Downs $1,605.81 when he received the telegram on May 27. It is undisputed that such amount had been retained by the appellants on job 426.08 pursuant to the contract's provision that the "General Contractor and the Owner shall retain 10% of the amount due on each payment until final payment becomes due" plus another retainage of 5%.

The jury's answer to the sixth special issue was obviously based on Downs' testimony that his anticipated profit on the two contracts was 40% of the contract prices. However, the evidence shows that job 426.08 had been completed and paid for except for the retainage. Downs is not entitled to recover his profit on job 426.08 plus his anticipated profit on that same job. He has recovered the retainage (based on the jury's answer to Issue Number 5), so his recovery of anticipated profits in this suit must be restricted

to those arising from the contract on job 426.09. Under the evidence the maximum amount would be 40% of $26,375.00, which is $10,550.00. The jury's answer to Special Issue Number 6 was $17,225.00, but a remittitur of $5,000.00 of this was made by the appellee in the trial court. The verdict is still excessive by the amount of $1,675.-00; the excessiveness will be cured by remittitur in this amount. Texas Pipe Line Co. v. Hunt, 149 Tex. 33, 228 S.W.2d 151 (1950); Central Power & Light Co. v. Graddy, 318 S.W.2d 943 (Houston, Tex. Civ.App.1958, no writ).

■ Appellants' fourth point is that the trial court erred in failing to instruct the jury as to the meaning and definition of the term "waiver". The record does not reflect that appellants objected to the omission or objected in writing and tendered to the trial court any definition of the word, so the point is overruled in accordance with the provisions of Rule 279, Texas Rules of Civil Procedure. Yellow Cab and Baggage Co. v. Green, 154 Tex. 330, 277 S.W.2d 92 (1955).

Appellants' last point of error, their fourteenth, states: "The court below erred in commenting on the absence of the defendant's only witness, said comment having the effect of impeaching the testimony presented by the witness and commenting on the evidence presented by him during questioning by the plaintiff's attorney." The witness referred to was Mr. Nixon. He was one of only two witnesses who testified in the trial, the other being the plaintiff, Mr. Downs. Nixon was called to the stand by appellee, who did not state that Nixon was being called as an adverse party or as an adverse witness. As we have noticed, Nixon testified that he had resigned from Nixon Construction Co. and that he is "no longer in it."

At the end of the first day of the trial, after Nixon had testified, but before either side had rested, he told the court reporter, the clerk and the attorney for appellants that he had to return to his home in Flori-

da, and he did so. When the trial judge was advised of this development the next morning, he told appellants' counsel that he was going to advise the jury so there would be no speculation about it. The reporter was told to "let the record reflect that the defendant excepts to the court's instruction as to the witness Nixon."

The trial judge then told the jury: "The Court informs you that the reason that the witness Nixon is not present in the court room is that he, I'm advised by counsel for the defendants, left the City of Houston yesterday after court adjourned for Miami, Florida. He did not have the permission of this Court to leave; he was a witness in this case and did not get any permission from the Court to leave this case, to leave Houston; nor did he get the permission or consent of plaintiff's counsel in the case, and he did not have the permission of the defendants' attorney. The defendant asked him to stay but he left anyhow, and that explains why he is not here."

■ We do not consider that this explanation amounted to a comment on the weight of the evidence, and although it was critical of the witness' conduct in leaving, it did not constitute impeachment of his testimony. Even if error, it was not so harmful that its effect could not have been removed by a later retraction or instruction. This being so, and there being no indication in the record that any ground was assigned for counsel's exception to the judge's remarks, the error, if any, was waived. Burgess v. Sylvester, 177 S.W.2d 271 (Amarillo, Tex.Civ.App.1944, aff'd 143 Tex. 25, 182 S.W.2d 358).

Appellee has moved for leave to file a supplemental transcript consisting of his amended petition, and such leave is granted under Rule 428, T.R.C.P.

The judgment of the Trial Court will be reformed and affirmed if within 15 days from this date appellee files a remittitur of $1,675.00. If this remittitur is not timely filed, the case will be reversed and remanded.

## On Filing of Remittitur

On May 8, 1969, we stated in a written opinion that if Mr. E. J. Downs, appellee, would file a remittitur of $1,675.00 within fifteen days from that date, the judgment of the trial court would be affirmed; otherwise, the cause would be reversed and remanded. The appellee has filed the suggested remittitur of $1,675.00.

Accordingly, as of this date, the judgment of the trial court in favor of the appellee, Mr. E. J. Downs, is reformed by deducting the amount of $1,675.00 from the judgment recovered by him and heretofore reduced by remittitur of $5,000.00 in the trial court. As so reformed, the reduced judgment is affirmed.

All of the costs of appeal will be taxed against the appellants. The trial court costs will be taxed as they were in that court.

Reformed and affirmed.