**Elton Ray ROBINSON, Appellant,**

v.

**Ann Louise ROBINSON, a/k/a Ann Louise Brunn, Appellee.**

**No. 01–94–01090–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

June 19, 1997.

---

Steven C. Haley, Brenham, for Appellant.

Verna Victoria Langham, Carter Casteel, New Bransfeuls, for Appellee.

Before WILSON, HEDGES and HUSTSON–DUNN,* JJ.

## OPINION

HUTSON–DUNN, Justice (Assigned).

The appellant, Elton Ray Robinson (Elton), appeals from a portion of the trial court's judgment finding that he must pay the appellee, Ann Louise Brunn (Ann), $6,000 under the provisions of the parties' divorce agreement, and that he is not entitled to any additional reimbursement for tax savings received by Ann for tax years 1988 and 1989.

In nine points of error, Elton argues the trial court committed error by concluding as a matter of law that Ann's claim to $6,000 under the terms of the divorce agreement is not barred by waiver or estoppel, and Elton's acceptance of Ann's payment of a portion of the tax savings she received on her 1988 and 1989 tax returns constituted a waiver of any remaining amounts due him for those years under the terms of the divorce agreement.

We affirm in part and reverse and remand in part.

### Summary of Facts

The parties were married on September 2, 1980, and the trial court entered a final decree of divorce on September 21, 1987. Both parties entered into an agreement incident to the divorce providing for a division of the marital estate. The divorce agreement provides in relevant part:

4.03 *Assets Awarded to ANN LOUISE ROBINSON.*

*. The Honorable D. Camille Hutson–Dunn, retired Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

. . . .

7. $12,000.00 cash to be paid by [Elton] to [Ann], at the rate of $1,000.00 per month for twelve months.

. . . .

### 4.08 *Prior Tax Years.*

[Elton] shall be responsible for all federal income tax deficiencies, including any penalties and interest thereon for tax years during the marriage. With this obligation also comes the right of [Elton] to any tax refund claim which may arise for any year of their marriage prior to the year of divorce.

. . . .

[A]ny tax deductions and tax credits arising from a year while the parties were married and not fully utilized in any of those years of marriage shall be awarded to [Elton]. Even though it is recognized that federal income tax law requires that most of the carryforward amount of unused tax deductions and credits be divided one-half to each party, the purpose is to enrich [Elton] with any future benefits derived by either party from the use of these carryforward amounts. To the extent that [Ann] has her federal income tax liability lowered because of the judicious use of these carryforward items, she shall pay to [Elton] within six (6) months from the date of filing her income tax return or ten (10) days after receiving any tax refund, whichever is later, an amount equal to the income tax saved by using these carryforward items. [Elton] or his representative shall have the right to annually inspect [Ann's] federal income tax returns until the carryforward amounts have been exhausted.

. . . .

### 5.13 *Amendment or Modification*

This agreement may be amended or modified only by a written instrument signed by both parties.

In January 1993, Elton filed a petition in small claims court asserting that Ann owed him reimbursement for tax savings she received by applying capital losses accruing during the marriage to her income tax returns for 1988 and 1989. In February 1993, Ann filed a motion for enforcement and clarification of the divorce agreement in district court, claiming Elton still owed her payment of $6,000 under section 4.03(7) of the divorce agreement. Elton filed a response to Ann's motion in district court, and also filed a motion to enforce the property award, reasserting his claim for reimbursement of the tax savings. The parties then agreed to consolidate their actions in a bench trial at the district court.

At trial, the parties stipulated that Ann applied investment tax credit carryforwards earned before the divorce in preparing her amended 1988 tax return and 1989 return. The parties also stipulated the amount of tax savings gained by Ann was $2,464 for 1988 and $2,954 for 1989, a total of $5,418.

After filing her amended 1988 and 1989 tax returns, Ann received a refund check for those years from the Internal Revenue Service totalling $3,607. She then endorsed the refund check over to Elton and left it with his accountant in June 1990. Elton deposited the check. Under the terms of the divorce agreement, her endorsement of the refund check left a remaining total of $1,811 owed to Elton for the tax savings taken in 1988 and 1989. Elton testified he never indicated to Ann that she did not have to repay him the full amount of this tax savings. Ann testified that when she received the IRS refund check and signed it over to Elton, she was not informed she owed him any additional amount for her 1988 and 1989 tax savings.

Elton testified that the first time he knew Ann owed him additional money for her use of the tax credit carryforwards was on August 6, 1992, when he received a letter from his accountant, Bill Holle. Holle acted as accountant to both Elton and Ann for some time after the divorce. Holle informed Elton that of the total savings Ann received on her 1988 and 1989 taxes due to the application of tax credits earned during the marriage, $1,811 remained outstanding. Holle's letter was introduced with a summary attached showing the amount of tax savings gained by Ann, the amount repaid to Elton, and the remaining amount still due to Elton. On September 30, 1992, Elton's attorney sent Ann a letter informing her of the amount she

owed him under the divorce agreement for the tax savings.

The trial court entered findings of fact and conclusions of law. The trial court concluded Elton's acceptance of Ann's $3,607 payment waived his right to any further reimbursement for the 1988 and 1989 tax savings because he did not protest the amount of Ann's payment or ask for the remainder due at that time. The trial court also found Ann owed Elton $900 for additional tax savings she received in 1990 and 1991. Neither party contests the trial court's findings concerning the reimbursement amount Ann owed Elton for the 1990 and 1991 tax savings.

Evidence was also presented concerning the payments under the "temporary support" provision of the divorce agreement. In a handwritten letter dated March 6, 1988, Ann wrote to Elton, as follows:

Dear Ray,

All day I've wanted desperately to call you. When I looked into your eyes this morning in church, the pain there broke my heart and I can't help reaching out. I didn't have the courage to talk to you on the phone, so I'm writing this note. If you tear it up or burn it, I'll never have to know.

But I must know if the pain is caused by anything I can change. If it's money, stop paying me. I'll sign papers if I need to, or you can use this note—it's in my writing, and I'll sign it. I'll pay for the wallpaper, and you can have the T.V. There is no *thing* in the world that's worth hating another person for.

I know you told me in your letter not to ever try to contact you again, and that you didn't believe anything I say. But I felt so strongly the tug in my heart, I couldn't help it. As I said, you can tear this up and never acknowledge it. I'll get the message.

But I still do care about you so very much. Maybe I always will, I don't know. And I've never lied to you, no matter what you believe. I thought you told me not to worry about the wallpaper or TV last fall one time when we were talking on the phone. I guess I misunderstood. I don't know what I've done to make you so angry, but I'm sorry you are. I know I've hurt you in ways I don't even know, as you have hurt me. Communicating was never one of our strong points. But I'd like the hurting to stop now. I don't mean to intrude or force myself into your new life, and I don't think we can be friends. But can we be at peace? I think I've come to terms with the end of our relationship. The love doesn't stop, just the relationship. And I accept that. I admit it took some time to get over your letter, but, as you pointed out, I've had those same feelings. I just never needed you to know about them—writing them down helped the feelings go away. I'm sorry you found one of the letters—I don't know which one it was because I probably wrote a hundred! I burned the others, I guess.

If someone in your family is ill or you've lost someone close, know that I am so very sorry and I know I can't help you thru [sic] that. But if your pain and sadness are caused by anything I can change, I'll do whatever I can.

I've prayed so hard for god [sic] to help show me the way he [sic] wants me to go. For some reason, maybe His reason, I feel compelled to write you this today. I truly never wanted your money or your possessions, and I never intended to take you to the cleaners. I was desperate for a little security—facing the world without you to take care of me was a terrifying prospect, no matter how much independence I proclaimed. It was just a defense. But I do have a good job and I can take care of myself, and I'm not terrified anymore. So if it's money that will make a difference to you, then just stop sending the checks.

You don't need to answer or acknowledge this. If I don't get a check next month I'll know your decision. No one needs to know about this if that's what you choose. If you want a notarized something—write it up, and I'll have it done.

It's funny, I sit here writing and there's *so* much I want to explain. When you asked to see me before Christmas and I said no, it was only because I was such an emotional mess I couldn't have even talked to you. I wanted to see you, but I would have just

cried and cried. I was really on the edge of breaking down right before and during the holidays. Oh, and about keeping the name, I really am sorry. I know how much I resented Pat keeping it, and she had even more reason than I, with the kids. I just like the way it sounds. Please try to understand. And I'm sorry for some of the things that have been said. I know my friends have been a little abrupt, but please believe I never told them to be or expected them to turn against you. I guess they felt I needed their support. I'm so sorry it hurt you.

There's so much more, but this is getting silly. As always, I say too much, probably. I've said what I wanted to. However you choose to respond will be OK.

/s/ Ann

There's no way I can give you back the wonderful times and experiences I enjoyed because we were married, as I told Nuffer. I'm sorry you resent them so.

(Emphasis in original.) After he received the letter, Elton stopped making the monthly payments to Ann.

Ann sent a handwritten letter to her accountant, Bill Holle, in September 1989. In the letter, she wrote in part:

I guess I must admit I still have mixed feelings about [Elton] and our situation, to the extent that I feel I did everything I could financially *not* to destroy or injure the investments or property and income he had created for himself, even to the point of cancelling the last half of the $12,000 he had agreed *to pay me*, because I had found a job and was able to support myself.

(Emphasis in original.) Elton testified Ann never indicated she expected him to make the remaining six payments. Ann admitted on cross-examination she did not contact Elton regarding payment of the remaining $6,000 until 1992.[1]

In 1992, Ann wrote to Elton's attorney in response to a request to examine her income tax returns, and asked if Elton would pay the balance owed to her. Elton's attorney re-sponded by indicating that it was Elton's position Ann had waived the remaining payments by her letter of March 1988. Elton testified he signed Ann's March 1988 letter only after she made the request for the balance of the "support." Ann testified it was never her intent to waive payment of the remaining $6,000.

The parties do not contest that Elton made six of the $1,000 monthly payments to Ann. The trial court concluded Elton owed Ann the remaining unpaid $6,000, and that her claim to this amount was not barred by release, accord and satisfaction, or estoppel. The trial court also concluded Ann's claim was not barred by waiver because Elton did not rely on Ann's letter except to stop the payments. The trial court determined Ann's letter was only an offer to cancel the remaining payments of the funds given to her, and was not timely accepted by Elton because he signed the letter after she withdrew her offer.

In his first five points of error, Elton argues the trial court committed error in concluding that Ann's claim to the unpaid amount of $6,000 was not barred by waiver, and in concluding her letter was actually an offer to cancel the payments of the amount still owed to her. Elton contends the trial court's conclusions of law regarding the unpaid $6,000 are inconsistent with the evidence adduced at trial.

Elton challenges the following conclusions of law:

1. [Elton] is indebted to [Ann] under ... the Decree in the amount of $6,000.000 being the six $1,000.00 installments accruing under ... the Decree after [Elton's] receipt of [Ann's] letter of March 6, 1988;

2. [Ann's] entitlement to such sums is not barred by the defense of release;

....

6. [Ann's] letter to [Elton] constituted only an offer to cancel the remaining ... payments which was not accepted until withdrawn by [Ann] in 1992;

were to be made.

---

1. We note that the decree of divorce did not specify the month, date or time the payments

7. [Ann's] entitlement to such sums is not barred by the defense of payment.

Elton contends the trial court's conclusions of law regarding the unpaid $6,000 are inconsistent with the evidence adduced at trial. Elton's argument raises both "no evidence" and "factual insufficiency" points of error. In determining a "no evidence" point, we are to consider only the evidence and inferences which tend to support the trial court's findings and disregard all evidence and inferences to the contrary. *Sherman v. First Nat'l Bank,* 760 S.W.2d 240, 242 (Tex.1988). Only if legal sufficiency is found do we address the factual sufficiency to support the findings. In a factual sufficiency review, we must consider, examine, and weigh all the evidence, both supporting and contrary, in making this determination. *Plas–Tex, Inc. v. United States Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989). The Texas Supreme Court has cautioned the courts of appeals in factual sufficiency cases to detail the relevant evidence and clearly state why the findings are factually insufficient or so against the great weight and preponderance of the evidence as to be manifestly unjust; why it shocks the conscience; or clearly demonstrates bias. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986).

■ When there is evidence of probative force to support the findings and judgment of the trial court, they are controlling on the reviewing court and will not be disturbed. *Mercer v. Bludworth,* 715 S.W.2d 693, 697 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). A trial court's findings of fact are reviewable for legal and factual sufficiency of evidence to support them. *Daca, Inc. v. Commonwealth Land Title Ins. Co.,* 822 S.W.2d 360, 362 (Tex.App.—Houston [1st Dist.] 1992, writ denied). Conclusions of law are reviewable when attacked as a matter of law, but not on the grounds of sufficiency of evidence to support them as if they were findings of fact. *Herbage v. Snoddy,* 864 S.W.2d 695, 698 (Tex.App.—Houston [1st Dist.] 1993, writ denied). The appellate court will review the legal conclusions drawn from the facts found to determine whether the conclusions of law are reasonable in light of the facts. *Id.; Mercer,* 715 S.W.2d at 697.

■ Elton argues that Ann's letter to Elton acts as a waiver of her right to collect the remaining six payments of $1,000 due her under the agreement. The trial court considered the testimony of Ann and Elton as to their intentions regarding Ann's letter to Elton. Throughout the trial, Elton never contended that because Ann did not plead ambiguity of the letter, that would prevent the trial court from determining that issue or considering the evidence. The record in this case shows the issue of ambiguity and the proper construction to be applied to the letter was tried by consent. *See Bonner v. United Services Auto. Ass'n,* 841 S.W.2d 504, 507–08 (Tex.App.—Houston [14th Dist.] 1992, writ denied) (finding that issue of ambiguity of insurance policy exclusion was tried by consent where testimony was elicited as to different interpretations of the exclusion and parties did not object).

■ The determination of whether terms are ambiguous is a question of law. *Yancey v. Floyd West & Co.,* 755 S.W.2d 914, 918 (Tex.App.—Fort Worth 1988, writ denied). Once a writing is found to be ambiguous, the determination of the parties' intent through extrinsic evidence is a question of fact. *Id.* at 917. When a writing is ambiguous, parole evidence becomes admissible to explain the writing or to assist in the ascertainment of the true intention of the parties. *Warren Bros. Co. v. A.A.A. Pipe Cleaning Co.,* 601 S.W.2d 436, 438–39 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). In a nonjury case, if there are questions of fact, the trial court is the finder of fact and as such is the judge of the credibility of the witnesses and the weight to be given to their testimony. *Medlin v. Medlin,* 830 S.W.2d 353, 354 (Tex.App.—Amarillo 1992, writ denied).

The following evidence was presented to support the trial court's finding that Ann did not waive her claim to the remaining $6,000 under the decree.

Ann testified Elton sent her a letter which was violent, emotionally and morally intimidating, and threatening to her. In response, Ann sent the letter at issue to Elton which she said was very emotional, but she did not

intend to give up her claim to the remainder of the money. She testified the thought of intentionally giving up her right to the $6,000 never entered her mind. Rather, because the agreement incident to divorce did not provide a time limit in which Elton was obligated to make the payments, she said instead of intending to forgive the debt all together, she just intended to temporarily relieve him of his obligation to pay.

The agreement incident to divorce provided the agreement could be amended or modified only by a written instrument signed by both parties. It was uncontested at trial that Elton did not sign Ann's letter until sometime after she had demanded he pay her the remaining monies. Elton testified that he thought the letter needed his signature in order that the letter would have legal effect. He said he signed the letter knowing that it took two signatures to amend the contract incorporated by the divorce decree. He did not sign the letter until after Ann reasserted her claim to the $6,000. This supports the trial court's conclusion that Ann's letter constituted an offer which she rescinded before Elton accepted it.

■ Elton contends there is evidence to support his conclusion that Ann unilaterally waived her right to the remaining $6,000, so that Elton was not required to sign the letter before giving it legal effect. Waiver is defined as an "intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Sun Exploration v. Benton,* 728 S.W.2d 35, 37 (Tex.1987). In determining if a waiver has in fact occurred, the court must examine the acts, words or conduct of the parties and it must be "unequivocally manifested" that it is the intent of the party to no longer assert the right. *Enterprise–Laredo v. Hachar's,* 839 S.W.2d 822, 835–36 (Tex.App.—San Antonio 1992, no writ).

In order for waiver to be present, the evidence would have to show Ann intended to relinquish her right to the remaining six $1,000 payments. Ann's testimony shows just the opposite; that she did not intend to relinquish this right. Therefore, the trial court did not err when it held that Ann's letter operated as an offer to waive the payments instead of a waiver or release.

■ Although some evidence was presented to suggest the possibility of waiver, a "no evidence" point of error may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Bransom v. Standard Hardware, Inc.,* 874 S.W.2d 919, 924 (Tex.App.—Fort Worth 1994, writ denied); *Commonwealth Lloyd's Ins. Co. v. Thomas,* 678 S.W.2d 278, 288 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.). None of the above situations are met here. Further, the trial court, as the fact finder, is the sole judge of the credibility of the witness' testimony. *Medlin,* 830 S.W.2d at 354. The trial court's findings of fact are not so against the great weight and preponderance of the evidence to disturb the trial court's judgment.

After considering all the evidence, we find the evidence is legally and factually sufficient to support the trial court's findings that Ann's letter of March 8 did not operate as a release or waiver of her right to collect the remaining six $1,000 payments. We hold that the trial court's conclusions of law are reasonable in light of the sufficiency of the facts. Elton's first five points of error are overruled.

### Tax Savings Reimbursement

■ In his sixth and seventh points of error, Elton contends the trial court committed error in concluding that his acceptance of the $3,607 payment from Ann for her 1988 and 1989 tax savings constituted a waiver of his right to receive any further payment, because the evidence is not legally or factually sufficient to support the trial court's conclusion. The trial court concluded Elton waived any additional payment by not protesting or asking Ann for the remaining amount due.

■ The trial court's finding rests on a presumption of implied waiver, as there

was no evidence presented to indicate Elton expressly waived his right to reimbursement for Ann's tax savings. The elements of waiver were summarized above, and include an intentional relinquishment of a known right or intentional conduct inconsistent with intent to claim that known right. *Giddings v. Giddings,* 701 S.W.2d 284, 289 (Tex.App.—Austin 1985, writ ref'd n.r.e.). The doctrine of waiver distinguishes between a showing of intent to waive by actual renunciation and a showing of intent to waive based on inference. *Federal Deposit Ins. Corp. v. Attayi,* 745 S.W.2d 939, 947 (Tex.App.—Houston [1st Dist.] 1988, no writ). In a situation involving an inferred or implied waiver, it is the burden of the party who is to benefit by a showing of waiver to produce conclusive evidence that the opposite party manifested its intent to no longer assert its claim. *Id.*

■ Although the trial court styled its finding that Elton waived his right to repayment of the tax savings gained by Ann as a conclusion of law, the question of waiver is one of fact for the trier of fact when it is a matter of inference. *Ford v. Culbertson,* 158 Tex. 124, 308 S.W.2d 855, 865 (1958); *Attayi,* 745 S.W.2d at 947. When reviewing a legal sufficiency point of error, we must consider only the evidence and inferences that support the finding of the trier of fact, and disregard all evidence and inferences to the contrary. *Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex.1988). In reviewing a factual sufficiency point of error, we must examine all the evidence, and we will set aside a finding only if it is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

We note that the doctrine of waiver on this issue requires conduct indicating an implied relinquishment of a known right as we initially consider the evidence supporting the trial court's finding. The evidence presented indicated that in June 1990, when Ann signed over the refund check from her 1988 and 1989 tax returns, Elton deposited the check and neither he nor his accountant informed her that she owed any additional amounts. Elton also stated that after his accountant informed him Ann owed an additional sum

for her tax savings, Elton's attorney did not contact Ann regarding additional reimbursement for the tax savings for almost eight weeks. This conduct could constitute some evidence of an implied waiver to support the trial court's finding that Elton waived his claim to the tax savings reimbursement. Therefore, we conclude the evidence was legally sufficient to support the trial court's finding of implied waiver.

Considering all the evidence, Elton testified that through his attorney, he had earlier attempted to obtain copies of Ann's tax returns so his accountant could review them. Elton introduced a letter dated March 10, 1992, from his counsel to Ann requesting copies of her tax returns for 1988 through 1991. In that letter, Elton's attorney informed Ann that Elton was requesting copies of her tax returns so he could "determine if any tax saving payment is due from you" under the provisions of the divorce decree. Ann produced copies of the returns and Elton's accountant, Holle, reviewed them. Elton testified he did not know the carryforward amounts used by Ann to generate a tax savings on her 1988 and 1989 returns left a remaining amount still owed to him until his accountant informed him of this fact by letter on August 6, 1992. Elton's attorney notified Ann on September 30, 1992, that she still owed an amount for the tax savings on her 1988 and 1989 returns.

It was Ann's burden to establish that Elton's actions constituted an implied waiver of his claim to the unpaid amount of reimbursement due him for Ann's tax savings. The only evidence presented to support such a finding was the delay between the time Elton learned of the additional amount owed by Ann and the time he contacted her for repayment; a time period of less than two months. Such a delay, standing alone and in light of Elton's previous actions to assert his right to repayment, cannot be sufficient to establish an implied waiver.

After considering all the evidence presented in the record and based on the circumstances of this case, we conclude the trial court's finding that Elton's actions manifested an unequivocal intent to relinquish a known claim was so against the great weight

and preponderance of the evidence as to be clearly wrong. We hold the evidence was not factually sufficient to support the trial court's finding that Elton waived his claim to repayment of the sum owed by Ann for the tax savings from her 1988 and 1989 tax returns. Accordingly, we sustain the portion of Elton's sixth and seventh points of error challenging the factual sufficiency of evidence to support the trial court's finding.

■■■■ In points of error eight and nine, Elton claims the trial court erred when it found that Ann's claim for the remaining $6,000 was not barred by estoppel. Elton correctly asserts that the purpose of estoppel is to prevent parties from asserting inconsistent positions that result in injustice. Another purpose is to protect those who have been mislead by false or inconsistent statements on which they relied. *Roberts v. Haltom City*, 543 S.W.2d 75, 78 (Tex.1976).

■■■■ The elements of equitable estoppel are: 1) A false representation or concealment of material facts made with knowledge (actual or constructive) of those facts, 2) with intention that it should be acted on, 3) to a party without knowledge, or means of knowledge of those facts, 4) who detrimentally relied upon those representations. *Cecil Pond Constr. Co. v. Ed Bell Invs., Inc.*, 864 S.W.2d 211, 214 (Tex.App.—Tyler 1993, no writ). All elements must be present to invoke the doctrine. *Douglas v. Aztec Petroleum Corp.*, 695 S.W.2d 312, 317 (Tex.App.—Tyler 1985, no writ).

We address the fourth element, which requires reliance causing "loss or injury to the other." *Fabrique, Inc. v. Corman*, 796 S.W.2d 790, 792 (Tex.App.—Dallas 1990), *writ denied per curiam*, 806 S.W.2d 801 (Tex.1991). There is no evidence in this record that demonstrates that Elton relied to his detriment on any action taken by the Ann. Therefore, because all of the elements must be satisfied, and Elton did not meet the fourth element of reliance, we overrule points of error eight and nine.

We affirm the trial court's judgment that Ann's claim to the remaining $6,000 due under provision 4.03(7) of the divorce agreement is not barred by the defenses of waiver or estoppel.

We reverse the trial court's judgment that Elton's claim to the remaining $1,811 due for tax savings gained by Ann for tax years 1988 and 1989 is barred by waiver. We have no jurisdiction to render judgment based on a factual sufficiency point of error; we must reverse the judgment and remand the cause for a new trial on this issue. *Wright Way Spraying Serv. v. Butler*, 690 S.W.2d 897, 898 (Tex.1985). Accordingly, we remand this cause to the trial court for a new trial solely on the issue of Elton's claim for repayment of the amount due him for Ann's tax savings on her 1988 and 1989 tax returns.

We affirm the trial court's judgment in all other respects.

WILSON, J., dissenting.

WILSON, Justice, dissenting.

I join with the majority in its determination of the tax savings reimbursement issue and its decision to sustain Elton's sixth and seventh points of error. However, for the reasons set forth below, I respectfully dissent from the majority's decision to affirm the trial court's judgment that Elton must pay Ann $6,000 in "temporary support."

There is no dispute that under a provision of the parties' divorce agreement entitled "Temporary Support," Elton agreed to pay Ann "$12,000.00 cash to be paid ... at the rate of $1,000.00 per month for twelve months." The parties were granted a divorce on September 1, 1987.

It was also not disputed that Ann sent Elton a signed handwritten letter dated March 6, 1988, that reads in relevant parts as follows:

Dear Ray,

All day I've wanted desperately to call you. When I looked into your eyes this morning in church, the pain there broke my heart....

But I must know if the pain is caused by anything I can change. *If it's money, stop paying me.* I'll sign papers if I need to, or you can use this note—it's in my writing, and I'll sign it.

. . . .

I do have a good job and I can take care of myself, and I'm not so terrified anymore. *So if it's money that will make a difference to you, then just stop sending the checks.*

*You don't need to answer or acknowledge this.* If I don't get a check next month I'll know your decision. No one needs to know about this if that's what you choose. If you want a notarized something [sic]— write it up, and I'll have it done.

. . . .

I've said what I wanted to. However you choose to respond will be OK.

(Emphasis added.)

The parties agreed that Elton timely made six of the monthly $1,000 payments to Ann before receiving this letter. After he received the letter, Elton stopped sending the monthly payments.

Ann also sent a handwritten letter to her accountant, Bill Holle, in September 1989. In the letter, she wrote:

I guess I must admit I still have mixed feelings about [Elton] and our situation, to the extent that I feel I did everything I could financially not to destroy or injure the investments or property and income he had created for himself, *even to the point of cancelling the last half of the $12,000 he had agreed to pay me,* because I had found a job and was able to support myself.

(Emphasis added.)

Elton testified Ann never indicated to him that she expected him to make the remaining six payments. Ann admitted on cross-examination she did not contact Elton regarding payment of the remaining $6,000 until 1992, *four years* after she sent the letter telling him he could stop paying her, and only after Elton made inquiries about her use of the tax credit carryforward amounts.

Ann testified she never intended to waive payment of the remaining $6,000. Elton testified he signed Ann's letter to him dated March 1988 only after she made the request for the balance of the "support."

The trial court entered the following relevant findings of fact and conclusions of law:

1. [Elton] is indebted to [Ann] under the Temporary Support Payments temporary support provision of the Decree in the amount of $6,000. . . .

2. [Ann] is entitled to such sum based on the Agreement Incident to Divorce which was not modified.

3. [Ann's] entitlement to such sum is not barred by the defense of release.

4. [Ann's] entitlement to such sum is not barred by the defense of accord and satisfaction.

5. [Ann's] entitlement to such sum is not barred by the defense of estoppel.

6. [Ann's] entitlement to such sum is not barred by the defense of waiver. There is no waiver because [Elton] did not rely on [Ann's] letter of March 6, 1988 except to stop making payments.

7. [Ann's] letter to [Elton] constituted only an offer to cancel the remaining temporary support payments which was not accepted by any signature or other legal proceedings until withdrawn. . . .

The majority does not identify any portion of the March 1988 letter that is ambiguous or explain why such portion is ambiguous. Even if, as the majority states, the trial judge implicitly found that Ann's letter was ambiguous, we must still decide whether that decision was correct. I do not believe that by failing to object to the parol evidence, Elton waived his right to rely on the letter as being unambiguous. The *Bonner* case, relied on by the majority, held that a lack of pleading ambiguity was excused because the issue was tried by consent. Here, it was Ann, not Elton, who asserted ambiguity. While trial by consent might excuse Ann from pleading ambiguity, I doubt that it precludes Elton from asserting the letter constituted a waiver as a matter of law, as he argued in the trial court and this Court. *See* TEX.R.APP. P. 52(d).

Further, the majority does not discuss Ann's letter to her accountant as bearing on its "finding" of ambiguity. Respectfully, it appears the majority has placed the cart before the horse. A written document is determined to be ambiguous from its four corners. If it is found to be ambiguous, then

other evidence is considered to clarify its meaning. Here, the majority used other evidence to bolster its finding of ambiguity without stating why the language of the letter itself is subject to any different meaning other than Ann intended to give up her right to the additional $6000 as a good-will gesture in the healing process following the divorce.

The law of waiver is recognized in Texas as an intentional relinquishment of a known right or intentional conduct inconsistent with intent to claim that known right. *United States Fidelity & Guar. Co. v. Bimco Iron & Metal Corp.,* 464 S.W.2d 353, 357 (Tex.1971); *Pioneer Oil Co. v. Vallejo,* 750 S.W.2d 928, 929 (Tex.App.—Corpus Christi 1988, no writ); *Giddings v. Giddings,* 701 S.W.2d 284, 289 (Tex.App.—Austin 1985, writ ref'd n.r.e.); *Burton v. National Bank of Commerce,* 679 S.W.2d 115, 117 (Tex.App.—Dallas 1984, no writ).

The elements of waiver include: (1) an existing right, benefit or advantage; (2) knowledge, actual or constructive, of its existence; and (3) actual intent to relinquish the right (which may be inferred from conduct). *Federal Dep. Ins. Corp. v. Attayi,* 745 S.W.2d 939, 946 (Tex.App.—Houston [1st Dist.] 1988, no writ). Waiver of a right results as a legal consequence from the unilateral act of the party against whom it operates, and no act of the party in whose favor it operates is necessary to complete it. *Pioneer Oil Co.,* 750 S.W.2d at 929; *Giddings,* 701 S.W.2d at 289.[1] A waiver need not be founded on a new agreement, be supported by consideration, or be based on estoppel. *Burton,* 679 S.W.2d at 117. Further, once a right is waived, it is lost and cannot be reclaimed without the consent of the other party. *Id.* at 118.

Evidence of waiver typically takes one of three forms: (1) evidence of an express renunciation of a known right; (2) evidence of silence or inaction with respect to a known right for a period of time sufficient to indicate an intention to waive; or (3) conduct of a party knowingly possessing a right of such a nature as to mislead the other party into an honest belief that a waiver was intended or assented to. *Cecil Pond Constr. v. Ed Bell Inv.,* 864 S.W.2d 211, 215 (Tex.App.—Tyler 1993, no writ).

The evidence presented to the trial court indicated Ann possessed an existing right under the terms of the divorce agreement to receive $12,000 from Elton, and that she was aware of this right. In Ann's March 1988 letter to Elton, she stated that he could stop paying her if he so decided. The letter also stated that he was not required to respond in any manner. Ann's intent to waive her right to payment of the remaining $6,000 was stated unambiguously in this letter, although she later testified that it was not her intent to do so. Although Elton admitted he did not sign Ann's letter until after she reasserted her right to the unpaid $6,000, such action was not required under the doctrine of waiver, as waiver requires only a unilateral act by the party waiving the right. Once Ann informed Elton he did not have to pay her the remaining amount due under the divorce agreement, the waiver was complete.

Ann's letter to Holle, written one and one-half years later, further indicates she understood that she had relinquished her right to payment of the remaining $6,000. Ann waited more than four years before attempting to reassert her rights under the divorce agreement. In *Giddings,* the court found waiver when less than two months passed between a party's waiver and its attempt to reassert its rights. 701 S.W.2d at 286–87.

I conclude the evidence presented to the trial court established as a matter of law that Ann waived her claim to the remaining $6,000 by her March 1988 letter to Elton, as further evidenced by her subsequent letter to the accountant. Therefore, I would hold the trial court erred in concluding that Ann's claim to the $6,000 was not barred by the defense of waiver.

---

1. There is a split of authority concerning whether "reliance" is an element of waiver. *See Cox v. Bancoklahoma Agri–Serv. Corp.,* 641 S.W.2d 400, 404 (Tex.App.—Amarillo 1982, no writ); *Fisher v. First Nat'l Bank,* 584 S.W.2d 515, 519 (Tex. Civ.App.—Amarillo 1979, no writ); *Nixon Constr. Co. v. Downs,* 441 S.W.2d 284, 286 (Tex.Civ. App.—Houston [1st Dist.] 1969, no writ). Those cases deal with implied rather than express waivers. As this situation involves a question of an express waiver, I find those cases requiring reliance to be distinguishable.

Accordingly, I would reverse the trial court's judgment that Elton owes Ann $6,000 and render judgment that Ann waived her right to any remaining "support" amount.