NO. 07-04-0118-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

JANUARY 25, 2006

_____

HENRY F. FIELDS, et al.,

Appellants

v.

RICHARD A. WATERFIELD, et al.,

Appellees

_____

FROM THE 31st DISTRICT COURT OF ROBERTS COUNTY;

NO. 1841; HON. STEVEN R. EMMERT, PRESIDING

_____

*Memorandum Opinion*

_____

Before QUINN, C.J., REAVIS, J. and BOYD, S.J.[1]

This appeal arises from a summary judgment in an interpleader action filed by Brighton Energy, L.L.C. (Brighton). Appellants, Henry and Koma Fields, trustees of the Fields Mineral Trust, Kay Fields Henard, Jack Fields, Florence Marie Mahler, Hament Mahler, and Diane Mahler Hale, co-trustees of the Mahler Mineral Trust, (collectively referred to as the Fields) appeal from a summary judgment. Their dispute with appellees

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2005).

Richard A. Waterfield, R. Bruce Waterfield, Gail Waterfield, and Gwyn Waterfield, as co-trustees of the Richard A. and Gail L. Waterfield Revocable Trust, James Bruce Waterfield, Sandra Jean Waterfield, John Swanson, Joseph Decuyper, Phillip Snowden, Richard Paul Waterfield, Dorothy Buel, Craig Young, Cindy Young, and Larobb Oil Royalty Corp. (collectively referred to as the Waterfields), Peyton Oil & Gas, Inc., Upland Resources, Inc., and Brighton Energy, L.L.C. arose from the payment of royalties attributable to production from the Mahler No. 1 oil well. Four issues are before us. They involve 1) Brighton's failure to comply with the mailing requirement contained in the lease regarding the pooling of separate lands, 2) the effect of the lease language and field rules on the validity of the pooled unit, 3) the effect of the Pugh clause on the pooled unit at the end of the primary lease term, and 4) the trial court's refusal to award attorney's fees.[2] We reverse and remand.

### *Background*

According to the appellate record, the Fields granted an oil and gas lease to Brighton covering their 433 acres in Survey 1, Block Y, A. Studer Survey, Roberts and Hemphill County, Texas. The Waterfields, except for Peyton Oil & Gas, Inc. (Peyton), granted Brighton an oil and gas lease on their adjoining 210 acres in the J. C. Schule Survey, Abstract 435, Roberts County. Peyton granted an oil and gas lease to Upland Resources, Inc. As of August 13, 2001, the Fields lease, the Waterfield lease, and the Peyton lease covered all the mineral and nonparticipating royalty interests in the 643 acres.

---

[2]Brighton filed an "Appellant's Brief" but states that it did so "not to directly challenge the judgment of the trial court, but rather to preserve error and permit this Court to either affirm the trial court's judgment or reverse and render, so that this continuing controversy may be finally resolved without a remand."

Brighton proposed to drill a gas well in the northeast corner of the Fields tract, subject, according to Railroad Commission rules, to a 640-acre proration unit plus a ten percent tolerance. Therefore, Brighton decided to include the Fields, Waterfield, and Peyton leases in a pooled unit. Brighton and Upland entered into an operating agreement with respect to the well with Brighton as operator. Brighton, Upland, and Peyton executed a Declaration of Unit which pooled the Fields lease, Waterfield lease, and the portion of the Peyton lease on the Waterfield tract. Brighton thereafter obtained amendments to the leases to authorize a 643- acre unit as opposed to a 640-acre one.

Upon its drilling, the well was determined to be an oil well in the Parsell, South (Morrow Upper) field. Furthermore, the maximum drilling and proration unit for oil wells according to the applicable field rules was 320 acres, as opposed to 640. Thereafter, a controversy arose among the Fields, the Waterfields, and Peyton, as to the validity of the unit and the allocation of royalties. When the matter could not be resolved by the parties, Brighton initiated an interpleader suit.

Competing motions for summary judgment were filed. The trial court 1) granted Brighton's request to implead the royalties, 2) declared the declaration of unit to be valid, 3) declared a subsequent reformation of unit invalid, 4) ordered that Brighton designate an amended 320-acre proration unit to include 104.51 contiguous acres out of the Waterfield tract and 215.49 contiguous acres out of the Fields tract, 5) declared that all portions of the leases more than 100 feet below the base of the Upper Morrow formation and outside of the 320-acre unit be released, 6) declared that the mineral interest owners in the Waterfield tract receive royalties from past and future production in the proportion of 210/643 and the

3

Fields receive royalties in the proportion of 433/643, and 7) denied all requests for attorney's fees.

### *Issue One - Failure to Give Notice*

The first issue before us concerns whether the trial court erred in granting summary judgment on the question of whether conditions precedent went unsatisfied. The Fields alleged that Brighton failed to perform a condition precedent to the legitimate formation of a pooling unit. The condition involved written notification by mail to them of its actual designation of the acreage pooled. All agree that Brighton did not mail notice of same to the Fields group as required by the lease agreement. Nevertheless, Brighton argued that the requirement was either waived or that the Fields group was estopped from invoking it. The trial court apparently agreed since it concluded that the failure to comply with the lease provision did not prevent the 643-acre pooling unit from coming into effect. We find that there is a genuine issue of material fact as to the matter and sustain the issue.

The standard for review of a traditional summary judgment motion is well settled and need not be reiterated. Instead, we cite the parties to *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546 (Tex. 1985) and *Kimber v. Sideris,* 8 S.W.3d 672 (Tex. App.–Amarillo 1999, no pet.) for an explanation of it. Moreover, any doubt as to whether a genuine issue of material fact exists so as to defeat summary judgment should be resolved in favor of the non-movant. *Kimber v. Sideris,* 8 S.W.3d at 675. And, when both sides move for summary judgment and the trial court grants one motion and denies the other, we review the evidence presented by all movants and determine all dispositive questions presented. *Bradley v. State ex rel. White,* 990 S.W.2d 245, 247 (Tex. 1999).

4

Next, it is clear that a lessee has no right to pool minerals unless it is expressly granted by the lessor. *Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 860 (Tex. 2005). Similarly unquestionable is the rule that the validity of an effort to pool depends upon compliance with the specified methods and purposes contained in the lease. *Id.*

Here, the Fields and Waterfield leases contained the following provision:

> . . . . Lessee's election to form a pooled unit shall not become effective until Lessee files for record in any county in which all or part of the pooled acreage is located an instrument describing and designating such pooled gas leasehold estate, either before or after the commencement or completion of a well thereon or the commencement of production of gas therefrom, and the mailing of a copy of the same to Lessor.

Again, no one disputes that the instrument executed by Brighton "describing and designating such pooled gas leasehold estate" was filed as required but not mailed to the lessors. Thus, a provision upon which the validity of the pooling agreement was dependent did not occur. This circumstance would normally render the lessee's effort to pool invalid.

Yet, as lessee, Brighton and the Waterfields raised the specters of waiver and estoppel. They contend that the Fields knew of Brighton's intent to pool the tracts of land for purposes of drilling a gas well, said nothing of the mailing requirement until suit was filed, executed a document purporting to reform the unit to 320 acres, and accepted partial royalty payments. Thus, the requirement that a copy of the instrument be mailed to them did not bar the pooling effort of Brighton from taking effect.

Waiver is an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *United States Fidelity & Guaranty Co. v. Bimco Iron & Metal Corp.,* 464 S.W.2d 353, 357 (Tex. 1971); *Continental Casing Corp. v. Siderca Corp.,* 38 S.W.3d 782, 789 (Tex. App.–Houston [14th Dist.] 2001, no pet.). It can occur by

5

expressly renouncing a known right or by silence or inaction for so long a period as to evince an intent to yield a known right. *Continental Casing Corp. v. Siderca Corp.,* 38 S.W.3d at 789. As can be seen, all is dependent upon intent, and for an implied waiver to arise, that intent must be clearly demonstrated by the surrounding facts and circumstances. *Motor Vehicle Bd. of the Texas DOT v. El Paso Indep. Auto Dealers Ass'n, Inc.,* 1 S.W.3d 108, 111 (Tex. 1999); *see also Robinson v. Robinson,* 961 S.W.2d 292, 299 (Tex. App.–Houston [1st Dist.] 1997, no writ) (holding that the court may look at the acts, words, or conduct of the parties and it must be unequivocally manifested that it is the intent of the party to no longer assert the right). Though waiver may be a question of law if the facts involved are clear and undisputed, *see Sedona Contracting, Inc. v. Ford, Powell & Carson, Inc.,* 995 S.W.2d 192, 195 (Tex. App.– San Antonio 1999, pet. denied), it is a question of fact for the factfinder to resolve if the evidence on the matter conflicts. *Straus v. Kirby Court Corp.,* 909 S.W.2d 105, 108 (Tex. App.–Houston [14th Dist.] 1995, writ denied). So too is it a question of fact when it is a matter of inferring the requisite intent. *Robinson v. Robinson,* 961 S.W.2d at 300.

It is undisputed that the Fields executed a lease amendment, did not complain of the failure to receive notice prior to the dispute arising, executed a reformation of the unit as part of a proposed settlement, and received royalties on their uncontested 433/643 portion of the well production. However, evidence appears of record indicating that 1) the Fields did eventually invoke the requirement, 2) the purported effort to reform the unit was invalid, and 3) the Fields were entitled to royalties from the production of minerals under the lease irrespective of the validity of Brighton's pooling effort.

6

Also part of the summary judgment record was an original and a supplemental affidavit executed by Ronald D. Nickum, the attorney who represented the Fields *viz* Brighton and the lease. In them, he admits agreeing to amend the lease, but states, "I did not agree to waive, abandon, modify, or amend any other provision of the FIELDS-MAHLER acreage." He also stated:

> As the attorney for FIELDS-MAHLER who caused the lease amendment to be executed by my clients, I had no intent to waive the right of mailed notice nor was my conduct (and that of my clients based on my recommendation to sign the lease amendment) . . . inconsistent with claiming the right of mailed notice of pooling. At the time that I prepared the original oil and gas lease from FIELDS-MAHLER to BRIGHTON, I knew that its acreage constituted less than 640 acres, that some of the lands on its borders [were] held by production and not available to be leased or pooled with it, I knew that the producing wells in the vicinity were gas wells which had been drilled to the formation commonly called the Morrow formation, and I knew that the Morrow formation required a 640 acre proration unit for production of natural gas. I knew that there was a possibility that the acreage would be pooled with Waterfield acreage to the west to support a gas well (if Brighton was successful in finding the Morrow zone). Knowing all of this, I still felt it necessary to include in the original lease contractual pooling provisions requiring mailed notice of pooling. When the leases were amended, that didn't change my thinking at all. . . . There was no discussion of the mailing requirement between me and any Brighton representative.

> . . . The mailing requirement has to do with giving actual notice to the lessors of the entire contents of the unit designation. I learned the importance of receiving a copy of the unit designation for completed wells as a result of practicing law in the oil and gas area. The requirement enables me to know for certain that the lease is finally and effectively pooled with other lands and it provides a written document for my file upon which I can calculate royalty due to my clients. That is an important piece of information for my flies [sic] that I can use along with the records I am entitled to receive from the lessee under Paragraph 7(b) of the lease to independently confirm that the well is a gas well, that it is properly pooled as to the acreage covered by my clients [sic] lease, and it enables me to review division orders that come to my clients. . . .

> . . . It was never my intention to delete a condition precedent as to one issue - - - formal notice of the pooling - - - by agreement to amend the lease as to another issue - - - acreage tolerance. . . .

7

While evidence appears of record illustrating that Brighton's failure to mail the requisite notice did not stop the parties from proceeding with drilling effort, there is also evidence indicating that the notice provision was not meant to be waived. Nor can it be legitimately said that knowledge of Brighton's intent to pool sufficed to illustrate waiver. Knowing that someone intends to do something is quite different than knowing that they actually did it. The former involves information about something that has yet to and may not happen, while the latter contemplates notice of something that has occurred and is historically immutable. At the very least, the evidentiary record contained some evidence sufficient to create a material issue of fact as to waiver, especially since the purported waiver would be implied from conduct as opposed to expressed. Thus, the trial court could not conclude, as a matter of law, that the Fields waived the requirement.

Nor can we say that acceptance of royalty payments by the Fields was enough, as a matter of law, to prove estoppel. Again, the Fields were entitled to payment for the minerals being taken from their land per the lease with Brighton. *See Atkinson Gas Co. v. Albrecht*, 878 S.W.2d 236, 240 (Tex. App.–Corpus Christi 1994, writ denied) (recognizing that one is not necessarily estopped from claiming that a lease terminated though he accepted royalties tendered under the lease). One accepting what he is entitled to under any circumstance and without indication that he relinquishes the remainder falls short of illustrating the consistent positions that must arise for there to be an estoppel.

In short, the summary judgment record does not establish as a matter of law that the Fields waived their right to mailed notice or were estopped from invoking the provision. Consequently, the trial court was obligated to submit the issues to trial and resolution by a factfinder. Since it did not, it erred.

8

Because the remaining issues do not entitle the Fields to greater than that afforded by our resolution of issue one, we need not consider them.  Accordingly, the judgment is reversed and the cause remanded for further proceedings.


Brian Quinn
Chief Justice