**KTRK TELEVISION, INC. and Wayne Dolcefino, Appellants,**

v.

**Gordon S. FOWKES and Bettina S. Fowkes, Appellees.**

No. 01–96–01290–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 30, 1998.

Rehearing Overruled Nov. 9, 1998.

---

N. David Bleisch, Houston, for appellants.

G. Scott Fiddler, Houston, for appellees.

Before SCHNEIDER, C.J., and TAFT and NUCHIA, JJ.

## OPINION

SCHNEIDER, Chief Justice.

This interlocutory appeal arises from a libel suit brought by Gordon Fowkes and his wife, Bettina Fowkes, against KTRK Television, Inc. (Channel 13 or Undercover 13) and reporter Wayne Dolcefino (collectively "the media defendants"). Fowkes also asserted tortious interference with employment relationship, intentional infliction of emotional distress, and negligence/gross negligence causes of action. The media defendants brought this interlocutory appeal after the trial court denied their motion for summary judgment on Fowkes's libel and tortious interference with employment relationship causes of action. In a related cross-point, Fowkes contends the trial court improperly granted summary judgment for the media defendants on his intentional infliction of emotional distress cause of action. We reverse and render for the media defendants.

## I. FACTS

Dolcefino, in the course of a news investigation, sought access to the City of Houston's Building Department's inspection reports, which were maintained on the city's computer system. During the investigation, Dolcefino's attention focused on consulting work performed by Horace Cude. Gordon Fowkes worked as information manager for the city's Public Works and Engineering Department. Hal Caton, Fowkes's supervisor, designated Fowkes as the person responsible for providing the documents requested by Dolcefino.

Apparently displeased with the rate at which the records were produced by Fowkes, Dolcefino complained to the Department's Public Information Officer, Dick John, that records were being intentionally withheld. Dolcefino also went to Hal Caton's office and complained that Fowkes was withholding requested documents. Caton called Fowkes to his office to discuss the document requests with him and Dolcefino. During this meeting, an argument ensued between Fowkes and Dolcefino and profanities were exchanged.[1]

After the meeting, Dolcefino was told that another city employee would assist him in obtaining the requested information from the computer data base. Subsequently, the City produced the requested documents to Dolcefino's satisfaction. Later, Dolcefino began a series of broadcasts that focused on the propriety of city building inspectors taking free lunches from those who regularly required building permits or inspections. Fowkes was mentioned in one broadcast. The portion of the broadcast that mentioned Fowkes provided as follows:

[Dolcefino]: 13 Undercover complained often that City building officials were intentionally withholding records on Cude's consulting work during our investigation. A Channel 13 protest to City Hall led to the reassignment of the department's computer director, Gordon Fowkes. Fowkes's access to Building Department computers has now been limited.

[Fowkes]: I am discouraged from being in my office and I am discouraged from doing certain kinds of actions.

After Fowkes filed suit, the media defendants moved for summary judgment asserting substantial truth, lack of defamatory meaning, and other constitutional, statutory, and common-law defenses. The trial court granted partial summary judgment in favor of the media defendants on Fowkes's intentional infliction of emotional distress, negligence, and gross negligence causes of action. The court denied summary judgment on Fowkes's defamation and tortious interference with employment relationship claims. The summary judgment did not address Bettina Fowkes's claims for loss of consortium and household services.

## II. CONSTITUTIONALITY OF INTERLOCUTORY APPEAL STATUTE

■ Under Texas procedure, appeals are allowed only from final orders or judgments. *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex.1992). Unless a statute specifically authorizes an interlocutory appeal, appellate courts have jurisdiction only over final judgments. *Cherokee Water Co. v. Ross*, 698 S.W.2d 363, 365 (Tex.1985). Section 51.014(6) of the Texas Civil Practice & Remedies Code specifically allows an appeal from an interlocutory order that:

[D]enies a motion for summary judgment that is based in whole or in part upon a claim against or defense by a member of the electronic or print media, acting in such capacity, or a person whose communication appears in or is published by the electronic or print media, arising under the free speech or free press clause of the First Amendment to the United States Constitution or Article I, Section 8, of the Texas Constitution[.]

Tex.Civ.Prac. & Rem.Code Ann. § 51.014(6) (Vernon 1997).

---

1. Fowkes claims Dolcefino said, "I'm going to fuck all over you and you have never been fucked over until you have been fucked over by me." Dolcefino denies threatening to "fuck all over [Fowkes]," but admits obscenities were exchanged. Hal Caton recalls Dolcefino saying something to the effect that he did not believe Fowkes and that he was going to "fuck all over him." Fowkes then responded by stating, "Well, fuck you."

As a threshold issue, Fowkes raises three constitutional challenges as jurisdictional bars to appeal. He contends that section 51.014(6) of the Civil Practice and Remedies Code is unconstitutional because it:

 (A) is a "special law" under Texas Constitution article III, § 56,

 (B) violates the "open courts" guarantee found in Texas Constitution article I, § 3; and,

 (C) violates the equal protection provisions of the Texas and United States Constitutions.

## A. Special Law Challenge

■ Article III, section 56 of the Texas Constitution prohibits the legislature from passing any, "local or special law ... for limitation of civil or criminal actions.... And in all other cases where a general law can be made applicable." The constitutional prohibition of section 56 was intended to prevent the legislature from enacting laws granting special privileges to particular persons, groups, or locales in the state and to secure uniformity of law throughout the state as far as possible. *Maple Run at Austin Mun. Utility Dist. v. Monaghan*, 931 S.W.2d 941, 945 (Tex.1996).

■ The Legislature may make classifications for legislative purposes when based on characteristics that legitimately distinguish one class from others with respect to the public purpose sought to be accomplished by law. *Id.* The ultimate test of whether a law is general or special is whether: (1) there is a reasonable basis for the classification it makes, and (2) the law operates equally on all within its class. *Id.*

### 1. Reasonable Basis for Classification

■ Fowkes claims section 51.014(6) is offensive to the Texas Constitution because there is no reasonable basis for the classification it makes, and it fails to operate equally on all within the class. One rationale for the statute is to save the time and expense of a trial on the merits when the media may be entitled to a constitutional or statutory defense. *Grant v. Wood*, 916 S.W.2d 42, 46 (Tex.App.—Houston [1st Dist.] 1995, no writ).

In *New York Times v. Sullivan*, 376 U.S. 254, 273, 84 S.Ct. 710, 722, 11 L.Ed.2d 686 (1964), the United States Supreme Court recognized that libel claims against the media raise special policy concerns because they threaten both the media's exercise of its constitutional rights and the public's ability to receive information. Here, section 51.014(6) preserves the freedom of the press because the statute permits media defendants to appeal and obtain an immediate ruling on constitutional issues without incurring substantial expense. We conclude there is a reasonable basis for the classification created by the statute.

### 2. Law Operates Equally Within the Class

■ Fowkes contends the statute fails to operate equally on all within the class because the class completely excludes non-media libel defendants. The statute does create a class of "media defendants," but it permits all within the class of "media defendants" the right to appeal an interlocutory order. It applies to metropolitan television stations, small-town newspapers, family-owned radio stations, school newspapers, individual reporters, and anyone else who disseminates news to the public. The statute applies equally to all within the class. Non-media libel defendants are simply excluded from the class. Assuming for the sake of argument that Fowkes has standing to challenge the classification, we nonetheless hold there is a reasonable basis for the classification created by the statute and that it operates equally on all within the classification. Thus, section 51.014(6) is not a prohibited "special law."

## B. Open Courts Challenge

The Texas Constitution guarantees the right to "open courts" in providing that:

All courts shall be open, and every person for an injury done to him, in his lands, goods, person or reputation, shall have remedy by due course of law.

TEX. CONST. art. I, § 13. Therefore: (1) the legislature cannot impede access to the courts through unreasonable financial barriers; and (2) meaningful remedies must be

afforded, "so that the legislature may not abrogate the right to assert a well-established common law cause of action unless the reason for its action outweighs the litigants' constitutional right of redress." *Trinity River Auth. v. URS Consultants, Inc.—Texas,* 889 S.W.2d 259, 261 (Tex.1994).

## 1. Unreasonable Financial Barriers

■ Fowkes argues the statute places unreasonable financial barriers on libel victims because the statute requires a victim to incur the cost and delay of an appeal (possibly two appeals) in order to obtain and keep a jury verdict. We disagree. Section 51.015 of the Civil Practice and Remedies Code specifically provides for the recovery of attorney's fees and costs incurred in the appeal "if the order appealed from is affirmed." TEX.CIV.PRAC. & REM.CODE § 51.015 (Vernon 1997). Thus, if a media defendant loses an interlocutory appeal, the plaintiff's court costs and attorney's fees for the appeal must be paid by the media defendant, and the plaintiff is allowed to proceed to trial. If the media defendant prevails in the interlocutory appeal, then the plaintiff saves the costs and attorney's fees of a trial and subsequent appeal reversing the judgment. Moreover, the plaintiff would not be responsible for the media defendant's costs of winning the interlocutory appeal. TEX.CIV.PRAC. & REM.CODE § 51.015 (Vernon 1997). We, therefore, hold that the legislature has not placed unreasonable financial barriers on victims of libel.

## 2. The Restriction Balanced Against the Purpose

■ Fowkes contends the interlocutory appeal process places an unreasonable burden on libel victims in cases against media defendants. Here, plaintiffs must satisfy two criteria. They must demonstrate: (1) a cognizable common law cause of action that is being restricted; and (2) the restriction is unreasonable or arbitrary when balanced against the purpose and basis of the statute. *Sax v. Votteler,* 648 S.W.2d 661, 666 (Tex. 1983).

We disagree with Fowkes's contention that the burden of the interlocutory appeal is unreasonable when balanced against the legislative intent of protecting media defendants from meritless libel claims. Here, an interlocutory appeal insures that the chilling effect of protracted litigation will not diminish the free exchange of ideas guaranteed by the Texas and United States Constitutions. Moreover, the statute specifically provides for the recovery of attorney's fees and costs and, therefore, does not place an unreasonable restriction on a common law cause of action TEX.CIV.PRAC. & REM.CODE § 51.015 (Vernon 1997). This is especially true in light of the fact that attorney's fees are generally not recoverable. *Travelers Indem. Co. v. Mayfield,* 923 S.W.2d 590, 593 (Tex. 1996). For the reasons outlined above, we conclude that section 51.014(6) of the Civil Practice and Remedies Code does not violate the "open courts" provision of the Texas Constitution.

## C. Equal Protection Challenge

Fowkes next argues that section 51.014(6) violates the right to equal protection of the law guaranteed by Texas Constitution article I, section 3 and the Fourteenth Amendment to the United States Constitution. Because Fowkes does not argue or cite authority to establish that his protection is greater under the state constitution, his arguments will be addressed under the United States Constitution. *See Garay v. State,* 940 S.W.2d 211, 216 (Tex.App.—Houston [1st Dist.] 1997, pet. ref'd).

■ The United States Constitution guarantees "equal protection of the laws." U.S. CONST. amend. XIV, § 1. Both the state and federal equal protection guarantees require a similar, multi-tiered analysis. *Richards v. LULAC,* 868 S.W.2d 306, 310 (Tex.1993). Where the classification does not impinge on a fundamental right,[2] or distinguish between persons on a suspect basis such as race or national origin, it is valid as long as it is rationally related to a legitimate state purpose. *Id.* at 310–11. Because the classification created by section 51.014(6)

---

2. Access to courts is not a fundamental right unless the denial of that access itself impinges on a recognized fundamental right. *See Ortwein v.* *Schwab,* 410 U.S. 656, 658–60, 93 S.Ct. 1172–75, 35 L.Ed.2d 572 (1973) (access to court to seek welfare relief not a fundamental right).

does not abridge a fundamental right or distinguish between persons on a suspect basis, it is valid if it is rationally related to a legitimate state purpose. *Id.* at 311.

■■■ The legislature has enacted the statute in question to eliminate the chilling effect that the threat of extended litigation has upon the exercise of the protections secured by the First Amendment. The state has a legitimate purpose in furthering our national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open. The distinction between media libel defendants and non-media libel defendants created by the legislature is rationally related to a legitimate state purpose.

For the above reasons, we conclude that section 51.014(6) of the Civil Practice and Remedies Code is rationally related to a legitimate state purpose and, therefore, does not violate either the state or federal equal protection guarantees.

## III. SCOPE OF INTERLOCUTORY APPEAL

Having decided that the interlocutory appeal statute is constitutional, we must now consider the scope of the jurisdiction conferred on this Court by the statute. Specifically, we must decide whether we have jurisdiction to consider (1) Fowkes's cross-point of error, which attacks the trial court's decision to *grant* summary judgment for the media defendants on his intentional infliction of emotional distress claim, and (2) the trial court's *denial* of the media defendants' motion for summary judgment on the non-libel claim of tortious interference with employment relations.

### A. Cross-point by Fowkes

■■■ In a cross-point of error, Fowkes contends the trial court erred by granting summary judgment for the media defendants on his claim of intentional infliction of emotional distress. Article 51.014(6) confers jurisdiction on this Court over interlocutory orders wherein the trial court *denies* a motion for summary judgment based in whole or in part on a claim against or a defense by a media defendant arising under the free speech or free press clauses of the First

Amendment or the Texas Constitution. TEX. CIV.PRAC. & REM.CODE ANN. § 51.014(6) (Vernon 1997). The statute does not confer jurisdiction over orders wherein the trial court *grants* summary judgment in favor of the media defendant.

In *TSM AM–FM TV v. Meca Homes, Inc.,* 969 S.W.2d 448, 450 (Tex.App.—El Paso, 1998, pet. filed), the trial court denied the media defendant's motion for summary judgment, and also denied the libel plaintiff's motion for summary judgment. The media defendant brought an interlocutory appeal under article 51.014(6), and the libel plaintiff brought cross-points attacking the denial of his own motion for summary judgment. *Id.* The court held that section 51.014(6) did not confer jurisdiction over claims on appeal by libel plaintiffs. *Id.*

[T]he legislative history of the statute reveals that Section 51 .014(6) was not intended to inure to the benefit of a plaintiff who claimed to have been libeled or slandered by the media. The purpose of the section was to allow a newspaper, radio station, or television station that was sued for libel to make an immediate appeal of a judge's refusal to grant a summary judgment. By providing for an interlocutory appeal, Section 51.014(6) permitted the courts to sort out unmeritorious libel cases before the cases entered the time-consuming and expensive trial phase.

*Id.* at 451 (citation omitted). Accordingly, the court in *Meca Homes* held that it had no jurisdiction to consider the cross-claims brought by the libel plaintiffs. *Id.*

In *Rogers v. Cassidy,* 946 S.W.2d 439, 441 (Tex.App.—Corpus Christi 1997, no writ), the media defendant brought an interlocutory appeal after its motion for summary judgment was denied. The libel plaintiff brought a separate appeal, in which she complained that the trial court erred by denying her motion for summary judgment. Again, the court held that a plaintiff in a libel suit has no right to bring an appeal when its summary judgment against a media defendant is denied. *Id.* at 442.

We agree that section 51.014(6) was not designed to benefit libel plaintiffs by allowing

an interlocutory appeal from orders either denying their own motions for summary judgment or granting summary judgment for a media defendant. Accordingly, we decline to address Fowkes's cross-point of error regarding intentional infliction of emotional distress.

### B. Non-libel claims upon which summary judgment denied

In this case, Fowkes also alleged that the media defendants tortiously interfered with his employment with the City of Houston. This cause of action relied not only on the allegedly libelous broadcast, but also on statements made by Dolcefino to Fowkes's boss. The trial court denied the media defendants' motion for summary judgment on Fowkes's tortious interference with employment relationship claim. We must now decide whether section 51.014(6) confers jurisdiction on this Court to consider the denial of the media defendants' summary judgment on this cause of action.

In *Delta Air Lines, Inc. v. Norris*, 949 S.W.2d 422, 428 (Tex.App.—Waco 1997, writ denied), the court considered whether section 51.014(6) conferred jurisdiction to consider the trial court's denial of summary judgment on claims that the media defendant attacked on grounds other than free speech. The court concluded that section 51.014(6) conferred jurisdiction to consider the denial of a media defendant's motion for summary judgment, which was based, *in whole or in part,* on free speech grounds. *Id.* Even though several causes of action were attacked on grounds other than free speech, the court concluded that it had jurisdiction to address *all* the claims because the motion was based *in part* on free speech grounds. *Id.*

 In this case, the media defendants defended the libel cause of action on free speech grounds. Thus, the trial court's order, to the extent that it denied summary judgment on the libel cause of action and the tortious interference with employment relationship cause of action, was appealable. *See id.* Furthermore, we note that in this case, the media defendants attacked the tortious interference cause of action on several grounds including: (1) that Fowkes's tortious interference claim was indistinguishable from

his libel claim; (2) that Dolcefino's conduct was a bona fide exercise of his first amendment rights; and (3) that Fowkes suffered no damages as a result of the media defendants' alleged tortious interference. At least two of the defenses relied on by the media defendants are based on free speech grounds. Thus, in this case, both the libel claim and the tortious interference with employment relations claims were defended *in whole or in part* on free speech grounds. Accordingly, section 51.014(6) confers jurisdiction over the trial court's order, which denied the media defendants' motion for summary judgment on these claims.

In sum, we conclude that the interlocutory appeal statute: (1) does not confer any jurisdiction for this Court to consider a libel plaintiff's complaint that the trial court erred by *granting* a media defendant's motion for summary judgment, but (2) it does confer jurisdiction for this Court to consider any claim upon which the trial court *denied* the media defendants' motion for summary judgment, as long as the claims were defended in whole or in part on free speech grounds.

Having disposed of these threshold issues, we turn now to the media defendants' challenges to the trial court's denial of summary judgment.

## IV. DENIAL OF SUMMARY JUDGMENT

### A. Standard of Review of Summary Judgment

The same standard of review that governs the granting of a summary judgment applies to the denial of a summary judgment. *Ervin v. James*, 874 S.W.2d 713, 715 (Tex.App.—Houston [14th Dist .] 1994, writ denied). The movant for summary judgment must show there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985). In deciding whether there is a disputed material fact issue precluding summary judgment, we take evidence favorable to the nonmovant as true. *Id.* at 548–49. We also indulge every reasonable inference in favor of the nonmovant and resolve any doubts in his favor. *Id.* at 549. If the movant's motion

for summary judgment proof facially establishes his right as a matter of law, then the burden shifts to the nonmovant to raise fact issues precluding summary judgment. *Ervin*, 874 S.W.2d at 715. A defendant, to be entitled to summary judgment, must disprove at least one essential element of each pleaded cause of action or otherwise show the plaintiff could not succeed on any theory pleaded. *San Antonio Express News v. Dracos*, 922 S.W.2d 242, 247 (Tex.App.—San Antonio 1996, no writ).

### B. Libel Claim

#### 1. Truth or Substantial Truth

In their first and second points of error, the media defendants claim the trial court erred in denying their motion for summary judgment because, as a matter of law, the complained of broadcast was true or substantially true. Thus, the media defendants argue that they have successfully negated an element, *i.e.* falsity, of Fowkes's libel claim.

■ Truth is a defense in a defamation case. *See Frank B. Hall & Co. v. Buck*, 678 S.W.2d 612, 623 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). Section 73.005 of the Civil Practice and Remedies Code provides, "[T]he truth of the statement in the publication on which an action for libel is based is a defense to the action." Tex.Civ. Prac. & Rem.Code § 73.005 (Vernon 1997). To determine substantial truth, we are to consider whether the defamatory statement was more damaging to the plaintiff in the mind of the average reader than a true statement would have been. *Barbouti v. Hearst Corp.*, 927 S.W.2d 37, 65 (Tex.App.—Houston [1st Dist.] 1996, writ denied). We will consider each allegedly libelous statement.

**Statement 1: 13 Undercover complained often that City building officials were intentionally withholding records on Cude's consulting work during our investigation.**

■ A review of the summary judgment record shows that both Dolcefino and X Raziq, another employee of Channel 13, complained to Dick John that records on Cude's consulting work were being intentionally withheld. John, the media liaison for the Department of Public Works and Engineer-

ing of the City of Houston, also acknowledged that Dolcefino and Raziq complained. John's deposition testimony indicates he discussed these complaints with Fowkes's supervisor, Hal Caton. There is no summary judgment evidence to raise a fact issue on whether complaints were in fact made. Therefore, we conclude the first statement in the complained of broadcast was true or substantially true.

**Statement 2: A Channel 13 protest to City Hall led to the reassignment of the department's computer director, Gordon Fowkes.**

■ The summary judgment record shows that a confrontational meeting, wherein profanities were exchanged, took place between Fowkes and Dolcefino in the office of Fowkes's supervisor, Hal Caton. Sometime after the meeting between Caton, Fowkes, and Dolcefino, Raziq and Dolcefino were told that someone else would help them with their document requests Dolcefino testified that Caton told him Fowkes was going to be reassigned as a direct result of the confrontation between Dolcefino and Fowkes. Dolcefino further testified that Dick John told him that because he and Fowkes had some difficulty in dealing with each other, Fowkes was "taken out of the loop."

Fowkes testified that shortly after the confrontation with Dolcefino, Caton told him "to get out of town." Fowkes further testified that he was directed to stay away from his downtown office and to conduct his business at an alternate location. Although it may have been merely the confrontation between Dolcefino and Fowkes that led to the reassignment of Fowkes, the confrontation occurred as a direct result of the Channel 13 protests that documents were not being produced. As such, the statement, "[a] Channel 13 protest to City Hall led to the reassignment of the departments computer director, Gordon Fowkes" was true or substantially true.

**Statement 3: Fowkes's access to Building Department computers has now been limited.**

■ Fowkes testified in his deposition that he was shut off from access to the city computer for approximately a "week or so."

Moreover, in an e-mail to a city inspector under investigation, Fowkes said, "I am barred from the office and shut off from access to ILMS [city computer application]." He further stated, "the decision to exile me is likely a JHC [Caton] decision." As such, the statement, "Fowkes's access to Building Department computers has now been limited" was true or substantially true.

Measured against applicable standards, the statements by Dolcefino, although not totally accurate in every detail, were substantially true.

## 2. Libel by Implication

 Fowkes also argues that a statement may be defamatory by implication. The notion that a plaintiff can assert a cause of action for libel by implication, where the facts stated are substantially true, has been rejected by the Texas Supreme Court. *See Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 646 (Tex.1995) (court rejected contention that statements, although literally true, were slanderous because others might infer dishonesty). Moreover, this Court has held "the implications of a true statement, however unfortunate, do not vitiate an affirmative defense of truth." *Hardwick v. Houston Lighting & Power Co.,* 943 S.W.2d 183, 185 (Tex.App.—Houston [1st Dist.] 1997, no writ). To hold otherwise would chill the reporting of factual news because one might always infer negative implications from an event that actually occurred. For example, members of the media could never report an employee was terminated for fear someone would infer the dismissed employee was dishonest or committed some heinous act. Likewise, members of the media could never report an individual was being questioned by police for fear a viewer might infer the interviewee was guilty of some reprehensible crime.

Because this Court has concluded the alleged libelous statements were substantially true, the media defendants are entitled to summary judgment on Fowkes's libel claim. We sustain the media defendants' first and second points of error.

Our holding with respect to the first and second points of error makes it unnecessary for us to consider the media defendants' third (public official), fourth (lack of actual malice), fifth (lack of defamatory meaning), sixth and seventh (statements privileged) points of error, and we decline to do so.

## C. Tortious Interference with Employment Relationship Claim

Fowkes also claimed that the media defendants tortiously interfered with his employment relationship with the City of Houston (1) through the alleged libelous broadcast, and because (2) in addition to the broadcast, Dolcefino told Fowkes's supervisors that Fowkes was intentionally withholding requested documents. The trial court denied the media defendants' motion for summary judgment on Fowkes's tortious interference with employment relationship claim.

 In their eighth, ninth, and tenth points of error, the media defendants contend the trial court erred in so ruling. Specifically, the media defendants argue the trial court erred because (1) the tortious interference claim is indistinguishable from Fowkes's libel claims and must fail for similar reasons (point of error eight); (2) the conduct complained of by Fowkes was a bona fide exercise of Dolcefino's first amendment rights (point of error nine); and (3) the media defendants' conduct did not cause any damage to Fowkes's employment relationship with the City of Houston (point of error 10).

## 1. Tortious Interference Based on the Broadcast

 To the extent that Fowkes's tortious interference with employment relationship claim is based on the allegedly libel broadcast, the claim must fail. When a nonlibel claim is grounded on the same speech giving rise to a libel claim, a plaintiff must prove the falsity of the alleged libelous speech. *KTRK v. Felder,* 950 S.W.2d 100, 108 (Tex.App.—Houston [14th Dist.] 1997, no writ); *see also Hustler Magazine v. Falwell,* 485 U.S. 46, 56, 108 S.Ct. 876, 882, 99 L.Ed.2d 41 (1988); *Eimann v. Soldier of Fortune Magazine, Inc.,* 680 F.Supp. 863, 866 n. 3 (S.D.Tex. 1988), *rev'd on other grounds,* 880 F.2d 830 (5th Cir.1989). To hold otherwise would permit litigants to circumvent constitutional defenses against the tort of libel by pleading

torts that do not require falsity or actual malice. Because we have previously concluded that the broadcast was substantially true, Fowkes failed to meet a condition precedent to his tortious interference claims arising out of the broadcast. Accordingly, we sustain point of error eight.

### 2. Tortious Interference Based on Remarks to Fowkes's Supervisors

Fowkes's pleadings also allege that the media defendants tortiously interfered with his employment relationship with the City of Houston because Dolcefino told Fowkes's supervisors that Fowkes was deliberately withholding documents. Assuming without deciding that this alleges a cause of action separate from the libel claim, we nonetheless conclude that Fowkes's claim must fail.

 To prove a claim of tortious interference with an employment contract, a plaintiff must prove: (1) the existence of a business relationship subject to interference; (2) the occurrence of an act of interference that was willful and intentional; (3) that the act was a proximate cause of plaintiff's injury; and (4) that actual damage or loss occurred. *Holloway v. Skinner*, 898 S.W.2d 793, 795–96 (Tex. 1995).

 In their motion for summary judgment, the media defendants attacked the actual damage element of Fowkes's cause of action. To prove that Fowkes suffered no actual damages, the media defendant's introduced evidence that Fowkes was still employed by the City of Houston, and that his salary and benefits remained unchanged after Dolcefino incident. The burden then shifted to Fowkes to raise a fact issue on actual damages.

Fowkes introduced evidence to show that over one year after Dolcefino allegedly told Hal Caton, Fowkes's supervisor, that Fowkes was deliberately withholding documents, Fowkes was laterally transferred to another position with the City of Houston.[3] Fowkes argues that the transfer was the result of Dolcefino's comments to Hal Caton.

While this evidence may raise a question of fact as to *why* Fowkes was transferred, it does not raise a fact issue as to actual damages. Fowkes concedes that his salary and benefits were not affected by the transfer, and he remained in the employment of the City. We are unwilling to assume that a lateral transfer in and of itself is sufficient to show actual damage.

Because the media defendants successfully attacked the actual damage element of Fowkes's tortious interference cause of action, the trial court erred by denying their motion for summary judgment on this claim. Accordingly, we sustain point of error 10. In light of our disposition of points of error eight and 10, we need not address point of error nine (bona fide exercise of rights), and decline to do so.

### D. Bettina Fowkes's Claims

In points of error 11, 12, and 13, the media defendants claim the trial court erred in denying their motion for summary judgment on Bettina Fowkes's claims for loss of consortium and loss of household services. However, the summary judgment does not purport to dispose of these claims at all; summary judgment on Bettina Fowkes's separate claims was neither granted nor denied. Accordingly, there is nothing presented for this Court to review.

### E. The Media Defendant's Summary Judgment Objections

Because the media defendants are entitled to summary judgment on all claims properly before this Court, we decline to consider their fourteenth point of error, in which they challenged the trial court's rulings on their objections to the Fowkes' summary judgment evidence.

### V. CONCLUSION

We have no jurisdiction to consider the claims upon which the trial court either: (1) granted the media defendants' motion for summary judgment, or (2) did not rule at all. These claims are remanded to the trial court for further action, if necessary. On the claims properly before this Court, *i.e.* the

---

3. We note that Fowkes's transfer was authorized by Hal Caton's successor, Doug Williams, over

one year after Dolcefino's statements were made to Caton.

denial of the media defendants' motion for summary judgment on Fowkes's claims of libel and tortious interference with employment relationship, we reverse the judgment of the trial court and render judgment that Fowkes take nothing from the media defendants on these claims.