Reversed and Remanded and Memorandum Opinion filed August 9, 2005









Reversed and Remanded and Memorandum Opinion filed
August 9, 2005.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-01202-CV

____________

 

FRANK WATSON, Appellant

 

V.

 

HOUSTON
INDEPENDENT SCHOOL DISTRICT (HISD); DR. ROD PAIGE, Individually and in His
Official Capacity as Superintendent of HISD; LARRY MARSHALL, Individually and
in His Official Capacity as a Member of the HISD Board of Trustees, Appellees

 



 

On Appeal from the 151st
District Court

Harris County, Texas

Trial Court Cause No. 00-30349

 



 

M E M O R A N D U M   O P I N I O N








Appellant, Frank Watson, appeals the grant
of summary judgment in favor of appellees, Houston Independent School District
(HISD), Dr. Rod Paige, and Larry Marshall (collectively, Athe District@).  The District terminated Watson=s employment as an
Assistant Superintendent nine months into his two-year contract.  Watson subsequently sued the District for
various claims, alleging that he was dismissed for reporting corrupt activities
occurring within HISD.  The trial court
granted the District=s request for summary judgment without
specifying the grounds.  In his sole
point of error, Watson complains the trial court erred in entering summary
judgment against him because: (1) he did not waive any rights to sue the
District, especially for the particular claims he brought; and (2) his claims
are not moot despite his acceptance of a $76,145.07 payment from the District.  We reverse and remand to the trial court.

Factual and Procedural Background 

In the late 1990s, HISD began privatizing
its employee health care program. 
Watson, an HISD employee since 1968, became concerned with some of the
District=s practices
regarding the privatization.  He reported
these concerns to several HISD administrators, citing the District=s allegedly
preferential treatment of People 1st Healthcare Network, the only
minority-owned Independent Physician Association (IPA).[1]  Allegedly, this had negative implications for
other IPAs under contract with HISD and created a boon for several HISD administrators
who had close ties to People 1st. 
More importantly, Watson claimed it violated HISD=s conflict of
interest policies and had potential legal ramifications for HISD and those
involved.  While this was ongoing, Watson
began working for HISD under a new contract where he was given the position of
Assistant Superintendent for Employee Benefits and Claims Management.  Under the terms of the contract, Watson=s employment was to
last from September 1999 to August 2001. 
However, the District fired him on May 19, 2000.








In accordance with several provisions in
the employment contract, the District declined to provide Watson with any
procedural mechanism to contest his dismissal, but instead, wrote him a check
for $76,145.07, the equivalent of one-year=s salary plus sick
leave.[2]  Watson accepted and cashed the check on June
15, 2000, but then filed suit against the District the very next day.  Watson claimed that his termination was due
directly to his objections to the District=s healthcare
policies.  He sought damages under the
Texas Whistleblower Act,[3]
under the Texas Constitution,[4]
and for tortious interference with a contract. 


The District filed a motion for summary
judgment relying on the contractual provisions governing termination.  In its motion, the District argued that it
followed the proper procedure in dismissing Watson when it paid him a year=s salary upon
termination.  It further claimed that
because Watson accepted and cashed the check, he waived any right to sue for
his dismissal.  In addition, the District
argued the payment for one-year=s salary was the
full extent of damages to which Watson would be entitled in any event.  Therefore, the District posited that Watson=s claims were moot
because he had no recoverable damages. 
The trial court ultimately entered summary judgment for the District.  

Standard of Review








Under Rule 166a of the Texas Rules of
Civil Procedure, summary judgment is proper when the movant establishes that
there are no genuine issues of material fact and that he is entitled to
judgment as a matter of law.  Tex. R. Civ. P. 166a(c); Lear
Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex. 1991).  A defendant seeking summary judgment must, as
a matter of law, either: (1) negate at least one element of each of the plaintiff=s theories of
recovery; or (2) plead and prove each element of an affirmative defense.  Sci. Spectrum, Inc. v. Martinez, 941
S.W.2d 910, 911 (Tex. 1997); Centeq Realty, Inc. v. Siegler, 899 S.W.2d
195, 197 (Tex. 1995).  If the defendant
establishes a right to summary judgment, the burden shifts to the plaintiff to
present evidence raising a material fact issue. 
Centeq Realty, 899 S.W.2d at 197.

When a motion for summary judgment is
based on several grounds and the trial court fails to specify the basis for
granting summary judgment, the appellant must show that each ground alleged in
the motion is insufficient to support summary judgment.  FM Props. Operating Co. v. City of Austin,
22 S.W.3d 868, 872B73 (Tex. 2001).  Therefore, because the District argued in its
summary judgment motion that Watson=s claims were both
waived and moot, and the trial court did not specify why it granted summary judgment,
we must address both arguments.[5]  See FM Props. Operating Co., 22
S.W.3d at 872B73. 
We will affirm if either theory supports the summary judgment.  Star-Telegram, Inc. v. Doe, 915 S.W.2d
471, 473 (Tex. 1995).  However, when
reviewing the grant of summary judgment, we view the evidence in the light most
favorable to the non‑movant and make every reasonable inference and
resolve all doubts in favor of the non‑movant.  Centeq Realty, 899 S.W.2d at 197.

Waiver








In the District=s motion for
summary judgment and subsequent pleadings filed with the trial court, it argued
that a threshold legal issue prevented the case from proceeding to trial,
namely that Watson waived any right to sue. 
The District specifically posited that because Watson voluntarily
accepted the cash payment from HISD after he was terminated, he waived his
right to assert any and all claims against the District.

Waiver is an affirmative defense and may
be grounds for summary judgment.  See
generally Tenneco Inc. v. Enter. Prods. Co., 925 S.W.2d 640, 643
(Tex. 1996) (providing an example of when evidence is sufficient to establish
waiver for summary judgment).  However,
to be entitled to summary judgment on a waiver theory, the defendant must put
forth sufficient evidence of the plaintiff=s Aintentional
relinquishment of a known right or intentional conduct inconsistent with
claiming that right.@  Id.;
see also Jernigan v. Langley, 111 S.W.3d 153, 156 (Tex. 2003) (quoting Sun
Exploration & Prod. Co. v. Benton, 728 S.W.2d 35, 37 (Tex. 1987)); Robinson
v. Robinson, 961 S.W.2d 292, 299 (Tex. App.CHouston [1st
Dist.] 1997, no writ).  This is a Aheavy burden@ and must be
proved by showing a Avoluntary, intelligent and knowing@ waiver was made
by the plaintiff.  Gonzalez v. City of
Hidalgo, 489 F.2d 1043, 1052 (5th Cir. 1973). 

Waiver is largely a matter of intent and,
therefore, is generally a fact issue.  Tenneco
Inc., 925 S.W.2d at 643; Cont=l Casing Corp. v.
Siderca Corp., 38 S.W.3d 782, 789 (Tex. App.CHouston [14th
Dist.] 2001, no pet.).  Only where facts
are clearly established and are undisputed does waiver become a question of law
for the courts to decide.  Tenneco
Inc., 925 S.W.2d at 643.  For a court
to determine if a waiver has in fact occurred, it must examine the acts, words,
or conduct of the parties.  Robinson,
961 S.W.2d at 299.  The court should find
waiver where the party Aunequivocally manifested@ an intent to no longer
assert its rights.  See id.  Absent express intent, a party=s actions may
support a finding of implied waiver only if the surrounding facts and
circumstances clearly demonstrate intent. 
Cont=l Casing, 38 S.W.3d at 789 (citing Motor
Vehicle Bd. v. El Paso Indep. Auto. Dealers Ass=n, 1 S.W.3d 108,
111 (Tex. 1999)). 








In support of its contention that Watson waived any right
to sue, the District directs our attention to Watson=s employment
contract.  The District claims the
contract set out the full rights and responsibilities of the parties upon
termination and contends that Paragraph 7 was the exclusive provision governing
Watson=s rights.[6]  Paragraph 7 of the employment contract states:

The Administrator [Watson] may be terminated during the
term of this Contract without cause upon the payment by the District of the
unpaid base salary for the remainder of the Contract term . . . with a maximum
payment of one-year=s salary, including up to six months
accumulated sick leave . . . ; in the alternative, at the District=s option the
Administrator may be reassigned to an administrative position at a base salary
equal to the salary actually received by the Administrator before being
employed under this Contract.








The District claims this paragraph represented a
clear, express waiver of Watson=s right to file
suit against it.  However, Paragraph 7
simply established a procedure whereby the District could terminate employment
during the term of the contract.  See
generally Renken v. Harris County, 808 S.W.2d 222, 225 (Tex. App.CHouston [14th
Dist.] 1991, no writ) (AWhen, as here, rules and procedures are
set forth, the court must carefully determine whether the employer is granting
[or denying] a right . . . or is defining procedures that are to be complied
with when discharging an employee.@).  In other words, this provision simply
required the District to elect one of two options when terminating Watson=s employment
during the contract=s term. 
The District could either: (1) pay Watson the unpaid base salary for the
remainder of the termCup to one-year=s salaryCincluding
accumulated sick leave, i.e., $76,145.07 in this case; or (2) reassign Watson
to an administrative position at a reduced salary.  The District opted to offer the cash
payment.  No provision of Paragraph 7 can
reasonably be construed as a clear, voluntary, and knowing waiver by Watson of
his right to sue the District.[7]

Moreover, Watson presented evidence that
he did not intend to waive any rights to sue the District upon, allegedly
wrongful, termination.  Along with his
summary judgment response, Watson provided an affidavit explaining that he
understood his contract to bar only his rights under the Term Contract
Nonrenewal Act.  We agree with Watson
that Paragraph 8 was the only contractual provision that represented a clear,
express waiver and that it only waived his rights to request an administrative
review of his dismissal.  Therefore,
nothing in the contract represents a clear, express waiver of Watson=s right to sue the
District for alleged violations of the law.








In further support of its argument, the
District cites several cases where a party was held to have waived the right to
sue an employer based on the party=s acceptance of
post-termination benefits.  In two of
these cases there was a clear, express waiver which dictated the parties= rights and
responsibilities.[8]  However, here there was no clear, express
waiver of Watson=s right to bring suit against the
District.  In the third case relied on by
the District, Hurt v. Standard Oil Co., the court dismissed an employee=s breach of
contract claim against his former employer because he accepted monthly
retirement checks and other retirement benefits over the course of nearly two
years.  444 S.W.2d 342, 346B47 (Tex. Civ. App.CEl Paso 1969, no
writ).  The court explained that, by
accepting retirement benefits for nearly two years, the employee was estopped
from claiming he was forced to retire and waived his right to recover damages
for lost wages.  Id.  Therefore, the court in Hurt held the
employee=s actions in
accepting benefits from the employer over the course of two years constituted
sufficient evidence of an intent to waive his rights.  Id. 
This holding is consistent with the concept that a party may impliedly
waive known rights through action, words, or conduct.  See Robinson, 961 S.W.2d at 299; see
also Cont=l Casing, 38 S.W.3d at 789 (explaining that
a party=s actions may
support a finding of implied intent if the actions clearly demonstrate the
intent).  

An important distinction here is that
Watson filed suit almost immediately after he was terminated.  While he did accept a one time cash payment,
we do not believe this acceptance Aunequivocally
manifested@ his intent to waive his right to sue the
District for any and all claims.  See
Robinson, 961 S.W.2d at 299.  Neither
do we find it Aclearly demonstrated@ an intent
sufficient to constitute an implied waiver. 
Instead, as explained above, Watson simply accepted the payment as a
condition of his termination, not in lieu of any right to sue the
District for any and all claims.  See
Neiman-Marcus Group, Inc. v. Dworkin, 919 F.2d 368 (5th Cir. 1990) (holding
that, absent evidence of an express or implied agreement to the contrary, a
former employee was not estopped from suing for breach of contract even though
he accepted monthly paychecks after being terminated).  Therefore, the cases relied on by the
District are not dispositive of the issue presented here.








Nothing in the record indicates, as a
matter of law, that Watson clearly intended or understood his acceptance of the
cash payment to waive any rights to file suit against the District.  Therefore, we find that there is insufficient
proof that an express waiver occurred as a matter of law, and further
find that there was conflicting evidence as to Watson=s intent which
sufficiently raised a fact issue as to whether an implied, Avoluntary,
intelligent and knowing@ waiver occurred.  See Tenneco Inc., 925 S.W.2d at 643; Cont=l Casing Corp., 38 S.W.3d at
789.  Accordingly, we hold that the
District failed to sustain the Aheavy burden@ required for
summary judgment on its waiver theory.

Mootness

The District also
alleged in its summary judgment motion that Watson=s claims were
moot.  In support of this theory, the
District again relies on Watson=s acceptance of
the cash payment.  More precisely, the
District argued that Watson=s recovery was
limited to what he has already received, i.e., $76,145.07.  As such, it asserted that Watson=s claims were moot
because he has no recoverable damages. 
Ultimately, this argument is an attack on the damages element of Watson=s claims.








It is axiomatic that a plaintiff must
sustain some injury before he can bring suit. 
Spera v. Fleming, Hovenkamp & Grayson, P.C., 25 S.W.3d 863,
873 (Tex. App.CHouston [14th Dist.] 2000, no pet.).  Proof of damages is required for any
plaintiff to prevail, and Auncertainty as to
the fact of legal damages is >fatal to recovery.=@  Id. (quoting McKnight v. Hill &
Hill Exterminators, Inc., 689 S.W.2d 206, 207 (Tex. 1985)).  A corollary to this notion is the idea of
mootness.  The mootness doctrine limits
courts to deciding cases in which an actual controversy exists.  Lincoln Prop. Co. v. Kondos, 110
S.W.3d 712, 715 (Tex. App.CDallas 2003, no
pet.).  Under the mootness doctrine, a
controversy must involve a dispute of something more than a hypothetical or
abstract character.  Securtec, Inc. v.
County of Gregg, 106 S.W.3d 803 (Tex. App.CTexarkana 2003,
pet. denied) (citing Scurlock Permian Corp. v. Brazos County, 869
S.W.2d 478, 487 (Tex. App.CHouston [1st
Dist.] 1993, writ denied)).  A case
becomes moot when (1) there is no real controversy, or (2) when a party seeks
judgment which, when rendered, cannot have any practical legal effect.  Id.  (citing Scholl v. Firemen=s & Policemen=s Civil Serv. Comm=n, 520 S.W.2d 470,
471 (Tex. Civ. App.CCorpus Christi 1975, no writ)).  

The District contends that because it
provided the full rights to which Watson was entitled under the contract, he
has no recoverable damages and thus, his claims are moot.  The District again relies on Paragraph 7 of
the employment contract, but also cites Paragraph 8 of the contract and section
21.304 of the Texas Education Code to support its mootness theory.  We have already noted, however, that
Paragraph 8 merely waives Watson=s right, if any,
to request an administrative hearing under the Education Code.  Thus, Paragraph 8 is not relevant, and has no
application, to the District=s mootness
contention.  Further, section 21.304 of
the Texas Education Code, likewise, does not apply to this case.  Section 21.304 governs only the appeals of a
teacher=s dismissal to the
Commissioner of Education.[9]  This action does not involve an
administrative review of the District=s actions and at
no point in time has the Commissioner of Education been involved in the
proceedings.  Therefore, our analysis is
again limited to determining whether Paragraph 7 of the contract, and Watson=s acceptance of
the one-time cash payment, makes Watson=s claims moot.








As we have already explained, we do not
agree with the District=s application of Paragraph 7.  The contract unquestionably allowed the
District, under Paragraph 7, to terminate Watson=s employment
without cause during the term of the contract in exchange for a lump sum
payment equal to one-year=s salary. 
We agree that the District fully performed its obligations under the
contract in relation to how Watson was fired.  But the crux of Watson=s claims go to why
he was fired rather than how.  The
District=s application of
the mootness doctrine may have been proper had Watson merely asserted a claim
for breach of contract.  In that case,
the District would have fulfilled its contractual obligations by tendering the
$76,145.07 payment to Watson upon termination and he would have no further
recoverable damages.  However, Watson=s dispute is not
that his employment was terminated in violation of his contract, but rather,
that it was terminated in violation of the law. 
Therefore, the specific causes of action for which Watson seeks redress
are not governed exclusively by the contract. 
Because each of Watson=s causes of action
provides for damages beyond what the District provided, he has a valid
justiciable controversy. 








For example, the Texas Whistleblower Act
entitles a successful plaintiff to recoverCin addition to
actual damagesCup to $250,000 for emotional damages as
well as injunctive relief, court costs, attorney=s fees and
reinstatement.  Tex. Gov=t Code Ann. ' 554.003 (Vernon Supp. 2004B05).  Because Watson sued under the Whistleblower
Act, he was entitled to seek each of these damages or remedies over and above
the contractually required $76,145.07. 
Moreover, Watson requested equitable relief in the form of
reinstatement, an injunction to prohibit further acts of retaliation by the
District, and declaratory relief.[10]  These types of equitable remedies are
generally recoverable on constitutional claims. 
See, e.g., Haynes v. City of Beaumont, 35 S.W.3d 166, 182
(Tex. App.CTexarkana 2000, no pet.) (explaining that
even when damages at law are precluded, Aequitable remedies
for violation of constitutional rights may be enforced@).  Also, assuming he could succeed on his
tortious interference claim, Watson would be entitled to recover damages beyond
the $76,145.07 the District paid him. 
This could include damages for mental anguish and harm to his
reputation,[11]
as well as interest and court costs.  See
generally Michol O=Connor, O=Connor=s Texas Causes of Action 101B02, at ' 3 (2004) (listing
the damages recoverable in a tortious interference claim).  Therefore, his claims are not limited by the
$76,145.07 payment provided by the District.

The District also cites KTRK
Television, Inc. v. Fowkes, 981 S.W.2d 779 (Tex. App.CHouston [1st
Dist.] 1998, writ denied), for the proposition that Watson has no recoverable
damages and, therefore, has no real controversy for the courts to decide.  However, the plaintiff in Fowkes
conceded that his salary and benefits were not affected by the defendant=s allegedly
tortious interference with his employment relationship.  Id. at 790.  The First Court of Appeals relied on this
concession, and the fact that the plaintiff remained employed with the city, in
finding that he suffered no damages.  Id.  Here, Watson was terminated from his position
with HISD and seeks damages incurred as a result of that, allegedly wrongful,
termination.  Because he alleged causes
of action which allow for additional damages, i.e., more than simply lost wages
for breach of his employment contract, his claims are not moot despite
accepting the District=s check. 
Accordingly, we sustain Watson=s sole point of
error.

Having found the trial court erred in
granting summary judgment on the limited grounds alleged, we reverse its
judgment and remand the cause for further proceedings consistent with this
opinion.

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

Judgment
rendered and Memorandum Opinion filed August 9, 2005.

Panel
consists of Justices Yates, Anderson, and Hudson.











[1]  Specifically,
Watson reported that the District was improperly influencing the decisions of
HISD employees who had not designated an IPA provider so those employees would
select People 1st over other providers.  Watson suggested the ultimate goal was to
increase the number of patients and, thus, revenue for People 1st.





[2]  One provision
permitted HISD to terminate an administrator=s
employment without cause upon payment of up to one-year=s salary, including accumulated sick leave.





[3]  Tex. Gov=t Code
Ann. ' 554.001B.010 (Vernon 2004 & Supp. 2004B05).





[4]  Tex.
Const. art. I, '' 8, 19.





[5]  In its motion,
the District argued that it was entitled to summary judgment Abased on Affirmative Defense No. 6 in the HISD
Defendant=s Answer.@  Affirmative Defense No. 6 stated, A[t]he HISD Defendants assert the affirmative defenses
of waiver, estoppel, and offer and acceptance, based on provisions 7 and 8 of [Watson=s] contract with the District.@  The District
further argued in its summary judgment motion that Watson=s claims were moot. 


On appeal, the District also claims that
Watson=s Whistleblower action should be dismissed in light of
the Texas Supreme Court decision in Texas Dept. of Transp. v. Needham,
82 S.W.3d 314 (Tex. 2002).  Without
commenting on the merits of this point, we refuse to uphold the summary
judgment on this basis because the District did not present the issue to the
trial court.  See Tex. R. Civ. P. 166a(c); Sci.
Spectrum, Inc., 941 S.W.2d at 911B12; see
also Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 204 (Tex.
2002) (explaining that summary judgment issues not expressly presented to the
trial court cannot be considered by an appellate court).  Because the scope of our review is expressly
limited to those issues addressed in the District=s
summary judgment motion, we will reserve our analysis to the District=s waiver and mootness arguments. 





[6]  The District
made it clear, throughout the proceedings below, that it was limiting its  interpretation of Watson=s termination to Paragraph 7 of the contract.  For example, the District argued in its reply
to Watson=s summary judgment response: AWatson was terminated under paragraph 7, not
paragraph 8 . . . .@ (empahsis added). 
The District further stated in a hearing on Watson=s Motion for Reconsideration or New Trial: A[i]n this case there was -- in an at-will employment,
you simply fire a person.  You fire them,
and they are gone.  Here you had two
steps on the part of both parties.  The
district activated [sic] the Paragraph 7. 
And just to be clear, this is not a Paragraph 8 case. . . .
[Watson] was not terminated pursuant to Paragraph 8.  He was terminated pursuant to Paragraph 7.@  (emphasis
added).





[7]  We note that
another contract provision contained a clear waiver of Watson=s rights. 
Paragraph 8 explained that Ain
consideration for being employed in a position with a title of Superintendent .
. . the Administrator knowingly waives any claim to any rights the
Administrator might otherwise have under the Term Contract Nonrenewal Act,
Sections 21.201‑21.211, Texas Education Code.@  Ultimately,
this provision waived Watson=s rights, if any, to request an administrative hearing
under the Education Code.  See Tex. Educ. Code Ann. ' 21.201B.213
(Vernon 1996 & Supp. 2004B05).  This is
the type of clear, express waiver courts are willing to enforce.  See, e.g., Smith v. Golden Triangle
Raceway, 708 S.W.2d 574, 575B76 (Tex.
App.CBeaumont 1986, no writ) (enforcing a contractual
waiver which stated Athe undersigned . . . hereby releases, waives, discharges,
and covenants not to sue . . . [and] voluntarily signs the release and waiver
of liability . . . understand[ing] it is a release of all claims. . . .@).  However,
nothing in Paragraph 7 suggests that Watson was relinquishing any rights he
might have other than the right to continued employment.  Had the District intended Paragraph 7 to
waive Watson=s rights to bring suit, it could have included
language similar to that of Paragraph 8. 






[8]  Specifically,
the District cites Wright v. Heritage Envtl. Servs., No. 99 C 7579, 2000
WL 1474410, at *1B5 (N.D. Ill. 2000 Oct. 4, 2000) (holding that an
employee was precluded from pursuing a Title VII claim where the employee
executed a clear release and received benefitsCin the
form of cash paymentsCin consideration for the release) and Pack v. City
of Fort Worth, 552 S.W.2d 895 (Tex. Civ. App.CFort
Worth), writ ref=d n.r.e.,
557 S.W.2d 771 (Tex. 1977) (dismissing the personal injury claims of an
employee against the city after the employee executed a releaseCwhich stated it was a Arelease
from all claims for all liability of the City of Fort Worth on account of your
employment@C and in turn, received medical expenses, a year=s salary, and retirement benefits from the city).





[9]  Section
21.304(f) states A[i]nstead of reinstating a teacher [as determined
appropriate by the Commissioner of Education], the school district may pay the
teacher one year=s salary to which the teacher would have been entitled
. . . .@  Tex. Educ. Code Ann. ' 21.304(f) (Vernon 1996).  The rest of the subchapter explains the
procedure whereby a teacher may appeal his or her termination to the
commissioner.   See Tex. Educ. Code Ann. ' 21.301B.357
(Vernon 1996 & Supp. 2004B05).  However,
Watson did not seek redress via this administrative remedy because he was precluded
from doing so under his contract.





[10]  Watson cited
Chapters 37 and 65 of the Texas Civil Practice and Remedies Code to support his
claims for equitable relief.  See Tex.
Civ. Prac. & Rem. Code Ann. ''
37.001B.011, 65.001B.044
(Vernon 1997 & Supp. 2004B05).





[11]  The Restatement (Second) of Torts, ' 774A(c) provides that a party who
is liable to another for tortious interference with a contract is liable for Aemotional distress or actual harm
to reputation, if they are reasonably to be expected to result from the
interference.@ 
Restatement (Second) of Torts ' 774A (1977); see also Comstock Silversmiths, Inc. v.
Carey, 894 S.W.2d 56, 57 n.2 (Tex. App.CSan Antonio 1995, no writ); Exxon Corp. v. Allsup,
808 S.W.2d 648, 660 (Tex. App.CCorpus Christi 1991, writ denied); King v. Acker,
725 S.W.2d 750, 754 (Tex. App.CHouston [1st Dist.] 1987, no writ).  Furthermore,  comment (d) to ' 774A explains that tortious
interference is an action in tort where damages are not based upon contract
rules; therefore, Ait is not required that the loss
incurred be one within the contemplation of the parties to the contract itself
at the time it was made.@  Restatement (Second) of Torts
' 774A cmt. d (1977).