Reversed and Rendered and Memorandum Opinion filed September 15, 2005









Reversed and Rendered and Memorandum Opinion filed
September 15, 2005.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-04-00525-CV

_______________

 

STEVE ALLEN, Appellant

 

V.

 

GENE KOMAR AND FLORENCE KOMAR, Appellees

__________________________________________________________

 

On Appeal from the 55th District Court

Harris County, Texas

Trial Court Cause No. 01‑54528

__________________________________________________________

 

M E M O R A N D U M  
O P I N I O N

Appellant,
Steve Allen, appeals a judgment in favor of appellees, Gene Komar and Florence
Komar, on the grounds that: (1) the evidence is legally and factually
insufficient to prove damages or causation, and (2) the evidence conclusively
showed Allen was an agent for a contracting party; consequently he did not
tortiously interfere with the party=s contract.  Finding the evidence legally insufficient to
support the jury=s damage award, we reverse and render a take-nothing
judgment.








Background

Gene
Komar and Dennis Sizemore decided in late 2000 to enter into a tanning salon
business together.  They both asked their
mothers, Florence Komar and Jackie Sizemore, to finance the business.  On January 26, 2001, Florence and Jackie
signed a three-year lease for 3,300 square feet of space in a shopping
center.  The parties also entered into an
agreement to lease twelve tanning beds at $1,700 per month.  The parties agreed that Florence would make
the lease payment of $3,307.86 per month on the business space, and Jackie
would pay the lease on the tanning beds and purchase nutritional supplements to
be sold in the salon.  The Sizemores and
the Komars entered into an oral agreement to divide the costs and profits
evenly.  Prior to the opening of the
business, the Komars and Sizemores contributed approximately $90,000 each.

The
tanning salon opened for business in April 2001.  Gene Komar testified that from April 2001 to
October 2001, the business operated at a profit only two months, but the
business was improving prior to October 2001. 
On August 20, 2001, an attorney representing the Sizemores sent a letter
to the Komars notifying them that as of September 1, 2001, the
Sizemores would no longer contribute toward the operation of the tanning
salon.  The Komars attempted to buy the
Sizemores= interest in the business, but the
parties were unable to reach an agreement. 









On
October 13, 2001, Steve Allen entered the tanning salon and took control of the
business.  Allen testified he had a
management agreement with Jackie Sizemore to manage her part of the business.  As part of their agreement, Allen planned to
change the character of the business, and Jackie agreed that he would receive
all of any profit the business earned. 
On October 13, Gene Komar attempted to enter the business, but was told
by Allen to leave the premises.  Allen
told Komar that because his name was not on the lease, Komar could not remain
on the property.  Komar left, but
returned later that day to retrieve his personal belongings.  Komar testified that he attempted to enter
the business the next day, but found the doors to the salon were chained and
padlocked.

Florence
Komar testified that she attempted to work with Allen to keep the business
open, but Allen was unwilling to work with her. 
The lease agreement originally signed by Florence and Jackie was a
three-year lease.  Gene Komar testified
that he advised his mother to make lease payments after Allen took control of
the business for three months because the lease agreement required her to pay
the first year=s lease before she could be released
from the remaining two years on the lease. 
Florence testified she spent an additional $16,000 after Allen took over
the business.  Florence spent $9,923.58
in lease payments for three months, but did not testify as to how the
additional $6,076.42 was allocated.

The
Komars sued Allen for conversion, wrongful eviction, and tortious interference
with a contract.  The trial court granted
a directed verdict on the conversion and wrongful eviction causes of action.  Prior to submission of the charge to the
jury, Allen objected to the charge because there was no evidence of any damages
caused by his conduct.  The trial court
overruled his objection to the charge. 
On the tortious interference cause of action, the jury found Allen
intentionally and willfully interfered with the Komars= contractual rights and caused
damages in the amount of $106,000. 
Following the jury=s verdict, Allen filed a motion for judgment notwithstanding the
verdict in which he alleged the jury=s verdict was not supported by any
evidence that he had caused the Komars= damages.  The trial court overruled Allen=s motion and rendered judgment on the
jury=s verdict.  In his first two issues, Allen contends the
evidence is legally and factually insufficient to prove actual damages were
incurred or that his actions caused the damages.  In his third issue, Allen contends he could
not have interfered with the contract because he was Jackie Sizemore=s agent.

Damages








In his
first issue, appellant contends the evidence is legally and factually
insufficient to support the jury=s award of damages.  In his second issue, appellant contends the
evidence is legally and factually insufficient to support the jury=s finding as to the causation of
damages.  When both legal and factual
sufficiency challenges are raised on appeal, the court must first examine the
legal sufficiency of the evidence.  Glover
v. Tex. Gen. Indem. Co., 619 S.W.2d 400, 401 (Tex. 1981).  In conducting a legal sufficiency review, we
view the evidence in a light that tends to support the disputed finding and
disregard any evidence and inferences to the contrary.  Wal-Mart Stores, Inc. v. Canchola, 121
S.W.3d 735, 739 (Tex. 2003).  We will
sustain a legal insufficiency point when (a) there is a complete absence of
evidence of a vital fact; (b) the court is barred by rules of law or of
evidence from giving weight to the only evidence offered to prove a vital fact;
(c) the evidence offered to prove a vital fact is no more than a mere
scintilla; or (d) the evidence conclusively establishes the opposite of a vital
fact.  Merrell Dow Pharms., Inc. v.
Havner, 953 S.W.2d 706, 711 (Tex. 1997).

A
plaintiff in an action for tortious interference with a contract must prove
that he or she suffered actual damages.  KTRK
TV, Inc. v. Fowkes, 981 S.W.2d 779, 790 (Tex. App.CHouston [1st Dist.] 1998, pet.
denied).  The basic measure of actual
damages in an action for tortious interference with a contract is the same as
the measure of damages for breach of the contract at issue.  American Natural Petroleum Co. v.
Transcontinental Gas Pipe Line Corp., 798 S.W.2d 274, 278 (Tex. 1990).  One who is liable to another for interference
with a contract is liable for damages for (a) the pecuniary loss of the
benefits of the contract; (b) consequential losses for which the interference
is a legal cause; and (c) emotional distress or actual harm to reputation, if
they are reasonably to be expected to result from the interference.  Browning-Ferris, Inc. v. Reyna, 852
S.W.2d 540, 549 (Tex. App.CSan Antonio 1992), rev=d on other grounds, 865 S.W.2d 925 (Tex. 1993). 








Our
review of the record reveals a complete absence of evidence of pecuniary loss
of the benefits of the contract, consequential loss for which the interference
was a legal cause, or emotional distress to be reasonably expected to result
from the interference.  The jury found
appellees suffered $106,000 in damages as a result of appellant=s tortious interference with the
contract.  In support of the damage
award, appellees presented evidence that Florence Komar contributed $90,000 at
the time the business started and $16,000 after appellant took control of the
business.  The original $90,000 was
invested at least nine months before appellant took control of the
business.  Further, Florence testified
that most of the $16,000 spent following appellant=s take-over was spent to pay the
monthly lease on the business.  Appellees
presented no evidence that appellant=s interference caused them to invest
$106,000 into the business.

Appellees
contend appellant=s interference caused the loss of their interest in the
business.  Appellees contend their
damages are the lost value of the business because they lost the entire
business.  For this proposition,
appellees cite Sawyer v. Fitts, 630 S.W.2d 872, 874B75 (Tex. App.CFort Worth 1982, no writ).  In Sawyer, the Fort Worth Court of
Appeals held that the proper measure of damages for destruction of a business
is measured by the difference between the value of the business before and
after the injury or destruction. 
Appellees presented no evidence of the value of the business before or
after appellant=s interference.  They
presented evidence that Florence contributed $106,000 toward the business and
that the business showed a profit during part of the time the business was
open. The record contains no evidence of the business=s bank or accounting records.  Appellees are correct in their assertion that
the amount of damages in a case such as this cannot be easily measured, but
some evidentiary basis is required to support the jury=s award.  See Armendariz v. Mora, 553 S.W.2d
400, 404 (Tex. Civ. App.CEl Paso 1977, writ ref=d n.r.e.) (actual damage or
loss is an essential element of a claim for tortious interference.)  Appellant=s first and second issues are
sustained.

Agency








In
appellant=s third issue, he contends the trial
court should have granted his motion for judgment notwithstanding the verdict
because, as an agent of a contracting party, appellant did not interfere with
the contract.  The elements of tortious
interference with an existing contract are (1) an existing contract subject to
interference, (2) a willful and intentional act of interference with the
contract, (3) that proximately caused injury, and (4) actual damages or
loss.  Prudential Ins. Co. of Am. v.
Fin. Review Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000).  Because we found no evidence of the elements
of causation and damages, we need not address whether appellant was an agent of
a contracting party.  

Conclusion

Because
the evidence is legally insufficient to support the jury=s award of damages, we reverse and render
judgment that appellees take nothing.

 

/s/        Charles
Seymore

Justice

 

Judgment rendered and Memorandum
Opinion filed September 15, 2005.

Panel
consists of Justices Edelman, Seymore, and Guzman.  (Edelman, J., dissenting without an opinion.)